**Robert MIMS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 7401.**

United States Court of Appeals Tenth Circuit.

June 9, 1964.

---

4. Hill v. Texas, N. M. & Okla. Coaches, 1954, 153 Tex. 581, 272 S.W.2d 91.

5. Fort Worth & D C. Ry. Co. v. Tidwell, 1922, 112 Tex. 89, 245 S.W. 667, 670.

Sam W. Moore and Raymond Burger, Oklahoma City, Okl., for appellant.

Jack R. Parr, Asst. U. S. Atty. (B. Andrew Potter, U. S. Atty., on brief), for appellee.

Before MURRAH, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

MURRAH, Chief Judge.

This is an appeal from a judgment and sentence after conviction on an indictment charging that "while aboard an aircraft in flight in air commerce, to-wit: a 1960 Mooney Mark 20A four passenger single engine airplane * * * [Robert Mims] did assault, intimidate and threaten Royden Dudley Schooley, a flight crew member who was the pilot of said airplane, while said pilot was in fact in actual control of said airplane in the air above the ground, so as to interfere with the performance by said pilot of his duties in controlling said airplane * * * in violation of Title 49, U.S. C.A. 1472(j)." The 1961 Amendment to the Federal Aviation Act provides that

"[w]hoever, while aboard an aircraft in flight in air commerce, assaults, intimidates, or threatens any flight crew member or flight attendant (including any steward or stewardess) of such aircraft * * *," shall be punished. 49 U.S.C. § 1472(j).

■■ Appellant's first contention is to the effect that the statutory language in which the indictment is framed is too indefinite to include a private airplane. But, during the pendency of this appeal, this question was conclusively answered in United States v. Healy, 376 U.S. 75, 83, 84 S.Ct. 553, 11 L.Ed.2d 527, wherein the Supreme Court, in construing a companion section of the same statute (49 U.S.C. § 1472[i]), held that private aircraft are plainly included within the scope of "an aircraft in flight in air commerce." By the same parity of reasoning, the statutory phrase "flight crew member" clearly and unmistakeably includes the pilot of an aircraft in flight in air commerce.

■ Appellant also challenges the legal sufficiency of the indictment for failure to specify the acts constituting the alleged assault, threat, and intimidation. The traditional criteria by which the legal sufficiency of an indictment is determined is whether it contains the elements of the offense charged and apprises the accused of the nature of the charge, so as to enable him to prepare a defense and to plead the judgment in bar. See: United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92; Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240; and Clay v. United States (10 CA), 326 F.2d 196. The essence of these high principles of due process is embodied in a simple rule, which provides that an indictment shall be "a plain, concise and definite written statement of the essential facts constituting the offense charged." F.R.Crim. P., Rule 7(c).

■ An indictment which is cast in the language of the statute is legally sufficient if, and only if, it states with requisite clarity the essential facts of the offense charged. See: Meer v. Unit-

ed States (10 CA), 235 F.2d 65; Cefalu v. United States (10 CA), 234 F.2d 522; and Madsen v. United States (10 CA), 165 F.2d 507. Generally, when the statute uses generic terms to define the offense, the indictment or information based thereon must descend to particularize the species of the generic terminology. See: Russell v. United States, ibid.; and United States v. Seeger (2 CA) 303 F.2d 478. The statutory words, "assault, threat and intimidation" are, to be sure, generic terms in the criminal law. There are many species or classes of assault, threat and intimidation known to the criminal law, and an indictment or a statute which attempts to condemn or charge a violation of one of the species must allege the essential facts of the species charged. But, the species of assault, threat or intimidation is not an essential element of the offense charged here, and we do not think it requisite to the validity of this indictment that the Government specify the particular overt acts employed to consummate the offense. Our case is not like Russell v. United States, supra, where the indictment under 2 U.S.C. § 192 was fatally defective for failure to allege the subject matter of the congressional inquiry, as to which the question propounded was pertinent, or United States v. Seeger, supra, wherein the authority to inquire was deemed a material element of the offense. In each of these cases, the indictments failed to allege the essential facts of a basic element of the offense. It may be that the accused is entitled to a specification of the manner or means by which the assault, threat and intimidation were inflicted on the pilot of the plane, but the Government is not required to plead the factual details of the offense in the indictment. If such details are deemed necessary, in the discretion of the trial Court, to enable the accused to properly prepare his defense, they may be supplied by a bill of particulars under F.R.Crim.P., Rule 7(f).

■ At the pre-trial proceedings, appellant moved for a bill of particulars to spell out (a) in what manner he assault-

ed, intimidated and threatened the pilot; (b) how the assault, intimidation or threats interfered with the pilot's control of the airplane; and (c) by whose direction the plane landed at Stillwater. See: F.R.Crim.P., Rule 7(f). The trial Court denied the bill, saying that the indictment was "sufficiently clear," and that appellant's attorney could "find out without much trouble from [his] client * * * what he did * * *." Ordinarily, the accused does have knowledge of what he did, but he may be entitled to know and be informed of the overt acts on which the Government relies. This is especially true in our case, in view of appellant's claim to the Court at pre-trial that by reason of his drunken condition, he was unable to recall what transpired.

The record indicates, however, that when the motion was made, appellant was in possession of an affidavit of the pilot and complaining witness, in which he had stated that at the time of the events alleged in the indictment, the accused was riding in the right seat of the plane with a set of dual controls and pedals at his position; and, that while the pilot was attempting to land at Stillwater, Oklahoma and was about fifteen feet off the runway, the accused without warning assumed control of the plane by using the controls and by so doing, started to climb, saying "We're not going to land here." At this point, another passenger in the plane overpowered the accused, to permit the pilot to regain and maintain control of the plane by counteracting any action the accused had upon the controls. When the plane had reached an altitude of about 400 feet, the accused turned the ignition key off, removed it and put it in his pocket. The pilot stated that appellant did not touch him, threaten him, made no menacing gesture or attempt to force him to do anything; and, that his actions were those of one who was "crazy drunk" and did not know what he was doing. On the basis of this affidavit, the accused moved to dismiss the indictment on the ground that the complaining witness' testimony to the grand jury was factually insufficient to support the true bill. In that respect, the trial Court was invited to examine in camera the minutes of the grand jury, in order to ascertain the sufficiency of the testimony. In these circumstances, we think the accused was as well informed of the essential facts of the case against him as the Government. In any event, he cannot say as a practical matter, that he was not sufficiently advised of the nature of the charge or unable to prepare to meet it. While the trial Court may have given the wrong reason for its denial of the bill of particulars, we think it was correctly denied.

■ Appellant attacks the sufficiency of the evidence to support the verdict. On trial of the case, the pilot as the complaining witness testified to substantially the same facts set forth in his affidavit with the additional facts that while aloft, the accused argued with the pilot concerning the proper compass heading for their destination and attempted to assume control of the plane by manipulating the dual controls. The pilot further testified that while in flight, the accused opened the door of the airplane, causing him to decide upon an immediate landing in Stillwater, Oklahoma instead of proceeding to their destination; that in order to subdue the accused and enable him to land, a third passenger in the plane hit the accused over the head with a bottle; and, that the removal of the ignition key by the accused forced him to make a "dead stick landing."

Two F.B.I. Agents testified concerning an interview with the accused several months after the incident. The accused told them that when the plane made a refueling stop at Wichita, Kansas, he bought some liquor and having consumed some of it, became dissatisfied with the manner in which the pilot was flying the plane and attempted to take over the controls; that he got into a scuffle and thought that someone hit him, knocking him out; and, that the next thing he knew, he was on the ground and in custody of the police. We think the evidence is entirely sufficient to support the verdict, based upon the Court's unchallenged

definitions of the critical statutory words.

Relying upon the Jencks Act, 18 U.S.C. § 3500, appellant contends that the Court erroneously failed to require the Government to produce a memorandum report of its witness after his testimony. On cross-examination, one of the F.B.I. Agents further testified that the accused refused to make a written statement; that he had made notes during the interview with the accused, from which a report was made and furnished to the United States Attorney's office; and, that he had used this report to refresh his memory prior to his testimony. It was against this background that the following exchange took place:

"Q. [Mr. Burger, Mims' counsel] But you do say the Government has a copy of that report?

"A. [F.B.I. Agent] As far as I know.

"Q. Do you have any objection—

"Mr. Parr: [Government's counsel] (interposing) If the Court please, I don't know what he is driving at. No question but we have a copy of the report. It's the only way I would know anything about the case.

"Q. (By Mr. Burger) Do you have any obection, Mr. Drain [F.B.I. Agent] to my seeing the report?

"Mr. Parr: May it please the Court, I object to that question. It is entirely incompetent, irrelevant and immaterial. Counsel knows that under Title 18, United States Code, Section 3500, he is entitled to a copy of a statement after a witness testifies, the statement of the witness, but no statement has been taken in this case from this witness.

"The witness: Only the pertinent things to this case were recorded. The entire conversation wasn't recorded.

"Q. [Mr. Burger] Do you have any objection to my seeing the pertinent things to this case?

"Mr. Parr: May it please the Court, I object to that question. That's improper cross examination."

The Court did not rule on the objections, and there is nothing in the record to indicate that the accused at any time or in any way requested the Court to require the Government or the witness to produce the report.

 In presently pertinent part, the Jencks Act provides that after a witness called by the Government has testified on direct examination, the Court shall, on motion of the defendant, require the Government to produce any statement of the witness in possession of the Government which relates to the subject matter of his testimony. 18 U.S.C. § 3500(b). Since the accused admittedly made no statement from which the Government's witness could have testified, the only statement involved is the memorandum report of the F.B.I. Agent. It is not entirely clear from the record whether the Government's objection to the interrogation of the witness concerning his report was based upon the contention that it was not "a statement" within the meaning of the Act. In any event, the Government now candidly concedes in its brief and at the bar of this Court that the memorandum report is "a statement" within the meaning of the Act, and producible upon demand by defense counsel. See: United States v. McCarthy, 301 F.2d 796, 801. The Government simply says that no demand was made for the report, and the accused cannot, therefore, complain of it now. See: Harrison v. United States, 115 U.S.App.D.C. 249, 318 F.2d 220; and United States v. Paroutian (2 CA) 319 F.2d 661. Appellant concedes the record in that regard, but insists that Government counsel's assertion to the effect that no statement had been taken from the witness was misleading and created the "illusion" that the report was immune from the Jencks Act; and further, that the Government and the Court knew that he intended to invoke the provisions of the statute, and that since no ritual of words is necessary, the Court was re-

quired to make appropriate inquiry and ruling in the circumstances. See: Howard v. United States, 108 U.S.App.D.C. 38, 278 F.2d 872; and Hilliard v. United States, 115 U.S.App.D.C. 86, 317 F.2d 151.

We are unwilling to impose any such duty upon the Court, in the absence of some form of request. True, counsel for the accused asked the witness if he objected to counsel seeing his report. But the question was not directed to the Court and cannot be construed as a request for the production of the statement. After all counsel—not the Court —was the cross-examiner and the strategist. And, it may well be that, practicing the art of cross-examination, counsel was content to rest with whatever psychological advantage he may have gained by the attitude of the Government's witness and counsel, with respect to the production of the report. In any event, the Court was not asked to rule, it made no ruling, and committed no error in failing to do so.

Appellant also complains of the prejudicial remarks of the Court during the course of the trial. We have examined the record with care and find nothing therein to support the charge.

■ Finally, appellant complains of the misconduct of the bailiff and marshal, in failing to bring to the attention of the Court the fact that one of the jurors had suffered a "heart attack," after submission of the case and during deliberations. The matter was brought to the attention of the Court in this way: After verdict and in chambers, counsel for the accused stated for the record that after the verdict had been returned and the jury discharged, one of the jurors met him in the hallway and told him that during the lunch recess he had suffered a heart attack; that when the jury returned to the deliberating room and "with knowledge of the marshal and other jurors," the juror was given a thirty minute rest period before resuming deliberations; that "he signed the verdict because he was in fear of having consequences of

the heart attack;" and, that he had advised the Foreman and other members of the jury prior to going to lunch that he had heard all the testimony and the Court's instructions, and was of the opinion that the defendant was not guilty, and that he was not going to sign the guilty verdict. Counsel then stated that he was bringing the matter to the Court's attention because he was surprised that the marshal had not told the Court "that there was a sick man in the jury room."

On the day of sentencing, the accused speaking for himself asserted that, "I would not have been pronounced guilty in your court, Sir, had not a man had a heart attack at lunch. That man is in this courtroom now." The Court replied, "You know the rule on impeachment of a jury's verdict?" To which the accused answered, "Yes, Your Honor. I said what I felt. I am sorry if it was out of order." Appellant now seems to argue that the failure of the marshal and the other jurors to bring the matter of the juror's condition to the attention of the Court operates to vitiate the verdict.

If the trial Court had known of the illness or indisposition of one of the jurors, it would have undoubtedly made appropriate inquiry and taken such action as the circumstances seemed to indicate. It may also be assumed that a responsible marshal or bailiff, having knowledge of any such matters, should inform the Court; and, that the marshal did not do so in this case. But even so, we do not think his dereliction in this regard affected the integrity of the jury's verdict. The jury did resume its deliberations after lunch and a thirty minute rest period. The subject juror did not ask to communicate with the Court. The jury arrived at a verdict, returned it in open court, and was discharged without the subject juror having complained to the Court. In these circumstances, he may not be heard to impeach his own verdict. See: Young v. United States (10 CA), 163 F.2d 187; and Loney v. United States (10 CA), 151 F.2d 1.

The judgment is affirmed.