**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Dennis PENNETT, Defendant-
Appellant.**

**No. 73–1694.**

United States Court of Appeals,
Tenth Circuit.

May 1, 1974.

---

E. Edward Johnson, Asst. U. S. Atty., Topeka, Kan. (Robert J. Roth, U. S. Atty., and Monti L. Belot, Asst. U. S. Atty., Topeka, Kan., on the brief), for plaintiff-appellee.

Benjamin E. Franklin, Kansas City, Kan. (David R. Gilman, Overland Park, Kan., on the brief), for defendant-appellant.

Before LEWIS, PICKETT, and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Dennis Pennett appeals his jury conviction of conspiring to distribute cocaine in violation of 21 U.S.C.A. §§ 841(a)(1) [1] and 846.[2]

Pennett was indicted with Hank Boyle. The indictment charged that they wilfully and knowingly did "combine, conspire, confederate and agree together, with each other", and with others to dispense a Schedule II narcotic controlled substance; that they advised Special Agent George Redden, Bureau of Narcotics and Dangerous Drugs (BNDD), who was acting in an undercover capacity, that they could supply high quality cocaine; and that they thereafter sold Redden a substance they alleged to be cocaine for $250. Boyle pled guilty to the charges and subsequently appeared as a witness on behalf of Pennett at his trial.

The Government introduced evidence that Agent Redden met with Boyle the night of the buy at a bar; that Boyle made several phone calls to Pennett to set up the buy; that Redden and Boyle went to Pennett's home; that Boyle entered the home and thereafter brought out a substance he represented to be cocaine; that Redden paid $250 for the substance; that when Boyle returned to the house, Agent Redden field tested the substance and discovered that it was not cocaine; and that after Boyle and Redden subsequently left Pennett's home, Boyle did not have the $250 on his person. The Government also showed that Agent Redden and Boyle were under surveillance during the buy by one Agent Scott.

Pennett testified that he had nothing to do with the sale; that he did not give or sell any cocaine to Boyle; and that he had never really met Boyle before the night of the buy. Boyle testified that he was the only active party in the sale; that he had gotten the cocaine in Wichita, Kansas; and that Pennett knew nothing about the sale and was not involved with it in any way.

On appeal, Pennett alleges that the Trial Court erred in: (1) admitting hearsay testimony; (2) denying his Motions for Acquittal; (3) denying him information available under the Jencks Act (18 U.S.C.A. § 3500); and (4) in admitting certain rebuttal testimony. Pennett also contends that a remark by the Government attorney during summation was reversible error, and that inconsistencies in Agent Redden's testimony were tantamount to his being convicted by his (Redden's) testimony alone.

I.

Pennett contends that the Trial Court committed plain error under Rule 52(b), Fed.R.Crim.P., 18 U.S.C.A., by admitting into evidence the hearsay testimony (statements of Boyle to Redden) elicited from Redden during the Government's case in chief. Pennett also contends that the jury was not properly instructed as to limitations which must be imposed upon such hearsay evidence. We

1. 21 U.S.C.A. § 841(a)(1) provides:
   (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or * * *

2. 21 U.S.C.A. § 846 provides:
   Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

hold that each of these contentions is without merit.

■ Hearsay statements of co-conspirators may be admitted against one another whenever the existence of the conspiracy is established by independent evidence. Mares v. United States, 383 F.2d 805 (10th Cir. 1967), cert. denied 394 U.S. 963, 89 S.Ct. 1314, 22 L.Ed.2d 564 (1969). Under *Mares*, such statements must be made during the conspiracy in order to be admissible. We followed and expanded this general rule in United States v. Coppola, 479 F.2d 1153 (10th Cir. 1973), wherein we noted that statements of co-conspirators made during the "continuation" of the conspiracy are admissible. See also Green v. United States, 386 F.2d 953 (10th Cir. 1967). Such statements must of course, be made in "furtherance" of the conspiracy. Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); United States v. Coppola, *supra*.

■ When we apply these standards with full appreciation that Agent Scott operated in a surveillance capacity for Agent Redden the night of the buy, and that he observed Redden and Boyle at the bar and later at Pennett's home, we hold that there is substantial independent evidence of the conspiracy. The Trial Court properly admitted the hearsay evidence given by Agent Redden.

Pennett's contention that the Trial Court did not properly instruct the jury on the limitations placed upon hearsay evidence in accordance with Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593 (1953), is without merit. In *Lutwak*, the Court noted:

These declarations must be carefully and clearly limited by the court at the time of their admission and the jury instructed as to such declarations and the limitations put upon them. 344 U.S. at 619.

■ The Trial Court specifically addressed the admissibility of the statements, twice during the trial, and once again in its general jury instructions. During the trial the Trial Court noted:

Now, Members of the Jury, before proceeding further there is one matter that I want to call your attention to. If you remember back during the Government's evidence the Court let in some hearsay evidence, that is some statements by Mr. Boyle that were made outside the presence of this defendant to the agent who was serving at the time in an undercover capacity. If you remember, the Court said at that time that those statements would be conditionally admitted. So at this time the Court is instructing you now that the Court has admitted those so-called hearsay statements . . . . * * * * I will tell you at this time that if you find beyond a reasonable doubt from the evidence in the case that a conspiracy, as alleged, existed, and that the defendant was one of the members of that conspiracy, then any statements thereafter knowingly made and acts thereafter knowingly done by any person found to be a member of the conspiracy may be considered by the jury as evidence in the case against the defendant even though the statements and acts may have occurred in his absence and without his knowledge, provided, of course, the statements and acts were knowingly made and done during the continuance of the conspiracy and in furtherance of some object or purpose of the conspiracy.

TR. pp. 90–91.

This admonition, coupled with the general instructions given to the jury prior to their deliberations, adequately apprised the jury of the limitations placed on the hearsay statements. We will not impute to juries the inability to correctly understand the totality of their instruction, even in a complicated case, United States v. Smaldone, 485 F.2d 1333 (10th Cir. 1973), nor will we impute nonfeasance to a jury in the form of a disregard of the Trial Court's instructions, Ellis v. State of Oklahoma, 430 F.2d

1352 (10th Cir. 1970), cert. denied 401 U.S. 1010, 91 S.Ct. 1260, 28 L.Ed.2d 546 (1971). None of the instructions given by the Trial Court were objected to by Pennett, nor did he proffer any additional instructions. We hold that the jury was properly charged.

## II.

Pennett contends that the Trial Court erred in denying his Motions for Acquittal and not directing a verdict at the close of the Government's case and at the conclusion of all the evidence. This contention, advanced without cogent authority, is couched in a summary reiteration of the arguments set forth in I., *supra*, along with an attack on the admission of other evidence. Having carefully reviewed the record, we hold that the Trial Court did not err.

In passing on the sufficiency of the evidence to support a verdict of guilty, an appellate court does not weigh conflicting evidence nor consider the credibility of witnesses. Rather, appellate courts must view all the evidence, direct and circumstantial, in the light most favorable to the prosecution. United States v. Addington, 471 F.2d 560 (10th Cir. 1973). Applying these standards, with full appreciation that appellate courts cannot try cases de novo, we hold that there was substantial evidence supporting the jury's determination of Pennett's guilt of conspiracy.

## III.

Pennett contends that the Trial Court erred in denying his formal demand for Agent Redden's reports made pursuant to the Jencks Act (18 U.S.C.A. § 3500),[3] after Agent Redden testified. Pennett also contends that the Trial Court erred in not directing the Government to deliver to him Agent Redden's "daily logs."

Pennett argues that since he "was entitled to the whole report without having any of it deleted", he was denied a fair trial. He cites Mims v. United States, 332 F.2d 944 (10th Cir. 1964), cert. denied 379 U.S. 888, 85 S.Ct. 158, 13 L.Ed.2d 92 (1964), and United States v. McCarthy, 301 F.2d 796 (3rd Cir. 1962), as authority for the proposition that he was entitled to the full reports to test the credibility of Agent Redden.

Under the Jencks Act, the United States is required to produce statements which relate "to the subject matter as to which the witness has testified." A finding by a trial court as to whether a particular writing or portion thereof is a "statement" as defined by the Act will not be disturbed on appeal unless clearly erroneous. Campbell v. United States, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963); United States v. Keine, 436 F.2d 850 (10th Cir. 1971), cert. denied 402 U.S. 930, 91 S.Ct. 1531, 28 L.Ed.2d 864 (1971).

In denying Pennett's request for the full report, the Trial Court noted:

> With that representation as to the matters deleted those would be pure matters which the defendant is not concerned or entitled to.

TR. p. 38.

Having carefully reviewed the entire report, "Report of Investigation", and the Xeroxed copy afforded Pennett, we hold that the Trial Court did not err in ruling that Pennett was not entitled to the full report, especially when he was, for all practical purposes, afforded a copy of the *whole report,* and the deleted material was not testified to.

Pennett also contends that the Trial Court erred in not ordering the Government to deliver Redden's "daily logs." At the Motion for Rehearing on the Mo-

---

3. 18 U.S.C.A. § 3500 provides in part:

  (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

tion for New Trial, the following colloquy transpired:

> THE COURT: How do you say that this is 3500 material?

> MR. FRANKLIN: Your Honor, we base our contentions that this is 3500 material because it involves activities of Agent Redden as to what he did with regard to the Defendant Dennis Pennett.

> THE COURT: Doesn't 3500 have to do with statements?

> MR. FRANKLIN: And it says statements, yes, and I think anything that an agent writes down, once it is written, becomes his statement.

> THE COURT: Oh, no, you don't have any law that says that do you?

> MR. FRANKLIN: I don't think counsel has any—

> THE COURT: You don't have any that says it is.

> MR. FRANKLIN: Not specifically daily logs. Now I haven't had an opportunity to research it but believe me, if it is in the law or any book, I'll have it.

> THE COURT: Well, you might give the Court the benefit of that instead of sandbagging them.

TR. pp. 5, 6.

We are inclined to believe that Pennett is still "sandbagging", in view of the fact that he has yet to set forth either persuasive argument or cogent authority in support of his contention that "daily logs" are statements under the Act. We are neither obligated nor inclined to make appellant's case. Nevertheless, our independent research has failed to reveal authority supportive of Pennett's contention.

▪ The Jencks Act was adopted by Congress following Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L. Ed.2d 1103 (1957). The object of the Act was not only to protect government files from unwarranted disclosure, but also, at the same time, to allow defendants materials usable for the purposes of impeachment. Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); United States v. Smaldone, 484 F.2d 311 (10th Cir. 1973). Under the Act, the burden is on the defendant to show that particular materials qualify as "statements" and are subject to production. United States v. Smaldone, *supra*; 1 A.L.R.Fed. 252 (1969).

We have held that FBI reports which did not relate to anything in direct examination of the FBI agent who testified at trial were not producible. United States v. Lepiscopo, 458 F.2d 977 (10th Cir. 1972). In United States v. Swindler, 476 F.2d 167 (10th Cir. 1973), cert. denied 414 U.S. 837, 94 S.Ct. 183, 38 L.Ed.2d 72 (1973), we held that it was not error for the government to refuse to furnish an agent's informal descriptions of the testimony of several witnesses.

▪ We hold that the Trial Court did not err in holding that the daily logs were not "statements" under the Act. Our inspection of these "logs" convinces us that they were definitely not "statements" but rather merely a part of the BNDD's internal recordkeeping procedures. The "logs", or more correctly, "Daily Activity Reports", set forth daily operations, expenses not vouchered, operation of government vehicle, and manpower utilization. The reports in question set forth a synopsis of daily activity in an extremely cursory manner. It is true that a portion of the "logs" dealt with our immediate case, but all of that material was contained in the copy of the "Report of Investigation" provided Pennett. Other portions of the "logs" contained information relating to other cases, constituting information which Pennett was not entitled to. Congress did not intend the Jencks Act to afford criminal defendants carte blanche discovery means whereby government materials would be available to them in ritualistic fashion regardless of materiality and relevancy. A degree of secrecy of internal operations is mandatory to, and often the essence of, good police opera-

tions which we will not interfere with on the basis of bald allegations which do not evidence actual prejudice to substantial rights.

### IV.

Pennett contends that the Trial Court erred in admitting improper rebuttal testimony from Agent Redden. The mere fact that testimony may have been given on direct does not preclude its admissibility on rebuttal. Hoffman v. United States, 68 F.2d 101 (10th Cir. 1933); United States v. Marsh, 451 F. 2d 219 (9th Cir. 1971). The admission of rebuttal evidence lies within the sound discretion of the trial court. Rodella v. United States, 286 F.2d 306 (9th Cir. 1960).

### V.

We have carefully reviewed each of the other allegations of error raised by Pennett and find them to be without merit.

Affirmed.