UNITED STATES of America,
Defendant-Appellee,

v.

Eugene L. SMALDONE, Jr.,
Plaintiff-Appellant.

No. 75–1959.

United States Court of Appeals,
Tenth Circuit.

Submitted Oct. 15, 1976.

Decided Nov. 9, 1976.

Edward W. Nottingham, Jr., Asst. U. S. Atty. (James L. Treece, U. S. Atty., Denver, Colo., on the brief), for defendant-appellee.

Alan Y. Cole, Washington, D.C. (Walter H. Fleischer, Washington, D.C., on the brief), of Cole & Groner, Washington, D.C., for plaintiff-appellant; James M. Shellow, Milwaukee, Wis., and Peter H. Ney, Englewood, Colo., of counsel.

Before BARRETT, BREITENSTEIN and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

Eugene L. Smaldone, Jr. (Smaldone) appeals the denial of his habeas corpus motion under 28 U.S.C. § 2255 to vacate and set aside his conviction and sentence. Smaldone is presently incarcerated in the federal penitentiary in Leavenworth, Kansas.

Smaldone was indicted and tried in the United States District Court for the District of Colorado in 1972. The jury found him guilty of a conspiracy to import cocaine in violation of 21 U.S.C. § 963. He was thereafter sentenced to ten years imprisonment. His conviction was affirmed on appeal. 484 F.2d 311 (10th Cir.1973). His application for writ of certiorari was denied by the United States Supreme Court. 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1974).

The details of the evidence presented in support of Smaldone's conviction on the conspiracy charge are fully set out in the opinion reported in 484 F.2d 311, *supra,* and will not be repeated here. The crux of the conspiracy charge and the evidence in support of Smaldone's conviction thereof is:

Commencing in April of 1972, Smaldone visited with one Larry Merkowitz, a pharmacist, in Aurora, Colorado, and thereafter Smaldone and Merkowitz put up approximately $9,750.00, each, under an agreement to purchase cocaine in Peru to be delivered and sold in the United States. The plan called for Craig Mundt, Ronald Greenspan and Ronald Nocenti to travel to Peru, purchase the cocaine and then smuggle it into the United States. Smaldone delivered his $9,750.00 to Nocenti on May 11, 1972. Mundt and Greenspan were arrested and detained by Peruvian authorities. Nocenti, however, returned from Peru to Denver on May 29, 1972. Merkowitz first met Nocenti, who delivered a briefcase to him. Thereupon, Merkowitz was arrested. Nocenti, a Government informer, contacted Smaldone. Shortly thereafter, Smaldone met with Nocenti at the Sheraton Motor Inn in Denver, where Smaldone accepted a packet later determined to contain cocaine. Smaldone, under Government surveillance, was arrested there.

In his habeas corpus proceeding as authorized pursuant to 28 U.S.C. § 2255, Smaldone moved to set aside his conviction and sentence on the following grounds, each of which were denied by the District Court

and each of which are presented here as the issues on appeal, to-wit: (1) that the failure of the Government to produce a Report of interviews by the Bureau of Narcotics and Dangerous Drugs (BNDD) of a key Government witness (Nocenti), which Report contained evidence favorable to Smaldone and tended to discredit Nocenti, violated Smaldone's right of due process of law under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (2) that the Report of interviews by the BNDD of Nocenti was producible under the Jencks Act, 18 U.S.C. § 3500, and (3) that the Government's action in remaining silent when the question of the existence of the BNDD Report of interviews with Nocenti was raised and when the Government was aware of the false nature of Nocenti's trial testimony requires a vacation of the conviction and sentence in that the action denied Smaldone a fair trial.

## I.

■ Smaldone alleges that he was denied due process of law in violation of the mandates of *Brady v. Maryland, supra,* by reason of the failure of the Government to produce for his use at trial the Report, consisting of notes of an interview had between BNDD Agent Farabaugh and Nocenti March 1, and 6, 1972, on the grounds that the notes constitute an exculpatory statement.

The trial court found that the Farabaugh notes have no relation to Nocenti's testimony at Smaldone's trial, are not exculpatory in nature and do not impeach Nocenti's testimony given at Smaldone's trial. We agree.

*Brady* held that suppression by the Government of evidence favorable to the accused, upon request for disclosure, violates the accused's due process of law where the evidence is material either to guilt or punishment, and this irrespective of the good faith of the Government. In *United States v. Harris,* 462 F.2d 1033 (10th Cir. 1972), we interpreted *Brady* to stand for the rule that the ". . . suppression, inadvertent or not, by the government of evidence favorable to the defense and affecting the credibility of a key prosecution witness may result in such inherent unfairness as to be violative of due process." *Ibid.* at 1034. In *United States v. Miller,* 499 F.2d 736 (10th Cir.1974), we interpreted *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972) as holding that the *Brady* rule is applicable "only when the following factors exist: (a) suppression by the prosecution after a request by the defense; (b) the evidence's favorable character for the defense; and (c) the materiality of the evidence." *Ibid.* at 743. In *United States v. Brumley,* 466 F.2d 911 (10th Cir.1972), *cert. denied,* 412 U.S. 929, 93 S.Ct. 2755, 37 L.Ed.2d 156 (1973), we held that a defendant's due process rights are not violated where the evidence which was not produced does not actually benefit the defendant's case.

Nocenti testified at trial that he had known Smaldone since 1968. Smaldone testified that his business and occupation was that of a gambler and that he had been a gambler some twelve years and had been convicted of gambling activities. The trial court observed that in light of Smaldone's criminal record, it was nothing unusual "in the fact that Mr. Smaldone was the subject of conversation at the Farabaugh interview, since Nocenti had known him since 1968." [R., Vol. IV, p. 67.] The trial court then outlined, in summary fashion, the Report of BNDD from the Farabaugh notes (this is the report in question) relating to conversations at the March 1 and 6 interviews when Nocenti was "debriefed" concerning his knowledge of drug trafficking and other illegal activities in the Denver area. Smaldone contends that withholding the Report was violative of his due process rights because: "If the jury believed Nocenti they could reasonably have concluded that [Smaldone] had joined the conspiracy. If Nocenti was lying and had actually given [Smaldone] the envelope under the pretense that it *contained money to be given to Tomeo, as [Smaldone] testified,* the jury would have no alternative but to find [Smaldone] was 'set up' by Nocenti for a

crime which [Smaldone] did not commit. The suppressed BNDD Report showed Nocenti's discussion of the Smaldones at the outset of his relationship with the BNDD, and long before [Smaldone's] involvement in the alleged conspiracy . . . *It further established Nocenti's indebtedness to Tomeo, and thereby materially supported Smaldone's testimony that when Nocenti handed him the envelope, Nocenti stated that it contained money for Tomeo.*" [Brief of Appellant, pp. 14, 15.]

The same issue as above presented was previously urged by Smaldone on his prior direct appeal to this Court and rejected. This Court sustained the trial court's refusal to permit the defense to question Nocenti on cross-examination as to whether, prior to May 31, 1972, he had borrowed money from Mike Tomeo. We rejected Smaldone's contention that the questioning was material to issues in the case.

We concur in the trial court's interpretation of the BNDD Report. It says—contrary to Smaldone's claim here—that Nocenti informed Farabaugh that he (Nocenti) ". . . *borrowed $1,000.00 from Smaldone through Michael Tomeo, a known associate of Smaldone.*" The court did not err in ruling that the BNDD Report—Farabaugh notes have no relation to Nocenti's trial testimony. In further support of the correctness of the trial court's ruling, we observe that at trial both Smaldone and Tomeo testified that Nocenti was indebted to Tomeo and that the Government did not present evidence disputing the existence of such a loan. Smaldone's further trial testimony was that when Nocenti handed him the envelope, Nocenti stated that it contained the money he owed Tomeo on the loan, which he requested Smaldone to deliver to Tomeo. Certainly, under all of the circumstances of the record, it cannot be contended that Smaldone was in anywise prejudiced by non-disclosure of the BNDD Report. The Report simply does not dispute Nocenti's trial testimony, nor does it in anywise corroborate Smaldone's and Tomeo's trial testimony going to the central defense theory of the case. The issue was

clearly before the jury. It involved a credibility issue, pure and simple. It requires more than a stretch of the imagination—in fact it requires guess, conjecture and speculation—to fathom how the BNDD Report relating to Nocenti's alleged loan from Smaldone could in anywise corroborate the testimony given by Smaldone and Tomeo that Nocenti represented to Smaldone that the envelope containing the cocaine instead contained the moneys Nocenti owed to Tomeo which he (Nocenti) desired to have Smaldone deliver to Tomeo in repayment. In its best light, the loan reference in the BNDD Report is ambiguous and certainly the trial testimony *would not* have enlightened the jury with respect thereto.

## II.

Smaldone contends that the trial court erred in denying his motion in that the BNDD Report above referred to was producible under and by virtue of the Jencks Act, 18 U.S.C. § 3500.

The trial court cited the pertinent portions of 18 U.S.C. § 3500(b), to-wit:

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. [R., Vol. IV, p. 70.]

The trial court ruled that nothing in the BNDD Report relating to the Nocenti-Farabaugh interviews of March 1 and 6, 1972, in anywise relates to the subject matter Nocenti testified to at trial and that, accordingly, the statements cannot be used for impeachment purposes, the only permissible use thereof, citing to *Campbell v. United States,* 365 U.S. 85, 92, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961); *Palermo v. United States,* 360 U.S. 343, 352, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); and *Johnson v. United States,* 269 F.2d 72, 74 (10th Cir.1959). The court did not err in so finding. Nothing contained in the BNDD Report—Farabaugh notes could be used for impeachment pur-

poses in that "Since the court foreclosed Nocenti from testifying about the Tomeo loan, the report could not be used to impeach on that matter . . . the remainder of the report contains information extraneous to any conspiracy to import cocaine from Peru or any attempt to 'frame' Smaldone. Consequently, the report did not 'relate' to Nocenti's testimony and its production was not required." [R., Vol. IV, p. 70.] We agree.

Smaldone contends that the trial court was "dead wrong" in the above finding and ruling, in that both the Government and the court ". . . obviously missed the point that Nocenti's talking about the Smaldones in early March 1972 supports the defense theory that Nocenti volunteered to implicate them in drug-related offenses which had not yet occurred. Certainly the Report would have helped in the cross-examination of Nocenti and very likely would have led to a verdict of acquittal on the one count upon which [Smaldone] was convicted and with respect to which his theory of being 'framed' was applicable." [Brief of Appellant, p. 23.]

The trial court finding and ruling was not clearly erroneous. It finds substantial support in the record. On direct examination, Nocenti testified to the events relating to his trip to Peru, the period of time there involved and the events which transpired, including his return from Peru to his contact with Smaldone in Denver on May 30, 1972, when the envelope was delivered. Nocenti did not testify to any matters set forth in the BNDD Report relative to the March 1 and 6, 1972, interviews, all of which occurred before Smaldone joined the subject conspiracy. Furthermore, nothing in the Report relates—in the critical subject matter sense—to Nocenti's trial testimony. That testimony dealt with the Peru trip and his recorded telephone conversation prior to the May 30, 1972, meeting with Smaldone. The BNDD Report contains no subject matter relating to Nocenti's direct testimony. The Report can fairly be characterized, as the Government contends, as Farabaugh's notes describing that related by Nocenti

concerning Nocenti's "general background and to outline his knowledge of criminal activities." [Brief of Appellee, p. 13.]

■ We recognize that in determining whether "statements" may be used for impeachment purposes, it is not necessary that the statement be a flat contradiction of the testimony at trial, and that the omission from the reports of facts related at the trial, or a contrast in emphasis upon those facts, may be material to the defendant's ability to properly conduct cross-examination testing the credibility of the witness. *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). This, however, does not grant any comfort to Smaldone. The fact remains that—in the plain words of the statute—none of the "statements" in the report relate to the subject matter of Nocenti's testimony at trial.

■ The object of the Jencks Act was not only to protect Government files from unwarranted disclosure but also to allow defendants materials usable for the purposes of impeachment. *Palermo v. United States, supra; United States v. Smaldone, supra.* Under the Act, the burden is on the defendant to show that particular materials qualify as "Statements" and that they relate to the subject matter of the testimony of the witness. *United States v. Pennett,* 496 F.2d 293 (10th Cir.1974); *United States v. Smaldone, supra; Travis v. United States,* 269 F.2d 928 (10th Cir.1959); *rev'd on other grounds,* 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961); 1 A.L.R.Fed. 252 (1969); 5 A.L.R.3d 763, 779.

■ We recognize that there may be some conflict, interpretivewise, in relation to two opinions from this Court as to producibility under the Act. In *Johnson v. United States, supra,* we held that although demanded by the defendant for the purpose of impeaching the testimony of an FBI agent who had testified for the Government relative to his interviews with the defendant, the agent's memorandum relating to the interviews was nevertheless not a "statement" as defined in the Act because

the memorandum was completed after the interviews and was predicated entirely upon the agent's interpretations and impressions. This ruling, on like facts, was re-affirmed by our Court that same year in *Travis v. United States, supra.* In *Mims v. United States,* 332 F.2d 944 (10th Cir.1964), *cert. denied,* 379 U.S. 888, 85 S.Ct. 158, 13 L.Ed.2d 92 (1964), we held that a memorandum report of an FBI agent relative to an interview that he had with the accused did constitute a "statement" within the meaning of the Act producible for cross-examination purposes upon demand of defense counsel where the FBI agent testified that the accused refused to make a "written statement." The FBI report consisted of notes relating to the interview and statements by the defendant. We need not resolve that which may be a conflict in our opinions, *supra,* in view of our full concurrence with the trial court's finding that the BNDD Report herein does not relate to anything Nocenti testified to in the course of his direct examination and, accordingly, was not subject to production. *Accord: United States v. Pennett, supra, United States v. Lepiscopo,* 458 F.2d 977 (10th Cir. 1972). The Jencks Act prohibits the pretrial discovery of statements made by prospective government witnesses, and it narrowly defines "statements" as writings signed or adopted by the witness and accounts which are "a substantially verbatim recital" of a witness' oral statements. 18 U.S.C. § 3500(e). The issue of whether handwritten, informal, or rough interview notes taken by a government agent during an interview or criminal investigation constitutes producible Jencks Act "statements" has been much litigated. The issue is unresolved among the circuits. This Court, in *United States v. Swindler,* 476 F.2d 167 (10th Cir.1973), *cert. denied,* 414 U.S. 837, 94 S.Ct. 183, 38 L.Ed.2d 72 (1973), held that the Government is not required under the Jencks Act to produce an agent's "informal" description of the testimony of several witnesses. *Accord: United States v. Krilich,* 470 F.2d 341 (7th Cir.1972), *cert. denied,* 411 U.S. 938, 93 S.Ct. 1897, 36 L.Ed.2d

399 (1973); *United States v. Fioravanti,* 412 F.2d 407 (3rd Cir.1969), *cert. denied,* 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969). [Denying discoverability under Rule 16 of the Fed.Rules of Crim.Proc.] *Contra:* Under Jencks Act or Rule 16, *supra; United States v. Johnson,* 521 F.2d 1318 (9th Cir. 1975); *United States v. Harrison,* 173 U.S. App.D.C. 260, 524 F.2d 421 (1975).

### III.

Finally, Smaldone alleges that the Government's action in remaining silent when the question of the BNDD Report of interviews with Nocenti was raised and when the Government was aware of the false nature of Nocenti's trial testimony requires a vacation of the conviction and sentence because Smaldone was thereby denied a fair trial.

Nocenti, on cross-examination, testified that he conferred with Agent Spears of the BNDD sometime in late April of 1972, and that Smaldone's name was not brought up. Mr. Shellow, counsel for Smaldone, moved for "the production of any reports of the Bureau of Narcotics and Dangerous Drugs concerning the conference between Mr. Nocenti and Mr. Spears on or about—well, the first of March, 1972, and ask that the Court inspect this in camera to see whether or not it is producible, and whether or not I am entitled to have it." [R., Vol. I, p. 316.] The court denied the request because the defense had adequate opportunity prior to trial to make the request and the defense did not present any evidence of the existence of such a report within the Jencks Act. [R., Vol. I, p. 316.] Smaldone urges, on appeal, that although at no time did Nocenti testify on direct examination that he had been interviewed by Agent Farabaugh of the BNDD, nevertheless, the question posed to Nocenti whether he had discussed the Smaldones with Agent Spears did, "within the context," include any conversation with Farabaugh. Smaldone insists that Nocenti's response that he did not discuss the Smaldones with Agent Spears constituted "outright perjury" because "it was grossly

misleading for Nocenti to answer as to Spears, but fail to reveal that his conversation with Spears had been perfunctory and the substantive interviews had actually been held with Farabaugh." [Brief of Appellant, p. 27.]

Smaldone insists that Government counsel and Agent Farabaugh (who was seated at the prosecution table) well knew that his counsel was unaware of any interviews Nocenti had with Agent Farabaugh, and, thus, failure to disclose the Farabaugh Report-notes deprived Smaldone of a "full opportunity to impeach a witness crucial to the Government's case." [Brief of Appellant, p. 29.]

■ There is no merit in the contention that the trial court erred in ruling that Nocenti had committed perjury or that the Government had knowingly permitted him to do so. He was cross-examined *only* with respect to his conversation with Agent Spears. There is no evidence indicating that Nocenti's testimony in that respect is false. Counsel for Smaldone persisted in inquiring of Nocenti concerning any subsequent conversations with Agent Spears. Even though counsel for Smaldone did not inquire of Nocenti relative to any conversation-interview he had with any agent of the BNDD except Agent Spears, he argues now that the Government was obligated to volunteer the existence of the conversation-interview Nocenti had with Agent Farabaugh. We have heretofore held that the BNDD Farabaugh Report-notes were not subject to production under the *Brady* doctrine. If the Farabaugh Report-notes were in fact producible under the Jencks Act, such could only be compelled after Nocenti's direct examination and a timely motion by Smaldone requesting the court to order the Government to produce *any* "statement" of Nocenti in the possession of the United States which *relates to the subject matter of the testimony of the witness* [18 U.S.C. § 3500(b)] *for the exclusive purposes of impeachment. Jencks v. United States, supra.* Smaldone has failed to bring his basic "need for disclosure" contention into play under the *Brady* doctrine or the *Jencks Act.* His argument is, for all practical purposes, simply that the Government prosecutor has an obligation to produce evidence which may or might in any manner aid in his defense. The contention is without merit. It fails to recognize the basics of our adversary system. Congress did not intend the Jencks Act to afford criminal defendants carte blanche discovery means whereby government materials would be available to them in some ritualistic fashion regardless of their materiality and relevancy. *United States v. Pennett, supra.* The range of waiver is wide. Smaldone knew or should have known of his right *to request* any and all Jencks Act material he deemed proper and necessary to his defense. He failed to pursue a course plainly available to him. It matters not that his effort would have proved unprofitable for want of merit. A defendant cannot be permitted to elect to freely pursue one course at pre-trial and then, when that course has proved unprofitable, to allege deprivation of a fair trial on appeal. *Johnson v. United States,* 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943); *United States v. Miller,* 460 F.2d 582 (10th Cir.1972); *Puckett v. United States,* 314 F.2d 298 (10th Cir.1963).

WE AFFIRM.

BREITENSTEIN, Circuit Judge (concurring in result).

I concur in the result because I am in substantial accord with the district court's Opinion and Order which denied § 2255 relief.