**UNITED STATES of America**

v.

**Ronald ANDERSON, also known as Lonnie Anderson, and Granville Harlon Mansfield.**

**Crim. A. No. 25061.**

United States District Court
D. Maryland.
Jan. 13, 1961.

Leon H. A. Pierson, U. S. Atty., and H. Russell Smouse, Asst. U. S. Atty., Baltimore, Md., Dist. of Md., for plaintiff.

Morris Lee Caplan, Baltimore, Md., for defendants.

R. DORSEY WATKINS, District Judge.

In the first count of a two-count indictment the defendants Anderson and Mansfield are charged with assault upon five named persons "with dangerous weapons, to wit, a speeding automobile

---

and a missile, with intent to do bodily harm, and without just cause or excuse." The assault is alleged to have occurred on the Baltimore-Washington Parkway, in a park area administered by the National Capital Parks, National Park Service, within the territorial jurisdiction of the United States.[1]

The second count charges that Anderson, on said Baltimore-Washington Parkway and within the territorial jurisdiction of the United States, "did operate a motor vehicle upon a dual lane highway which was constructed as a controlled and limited access highway, at a speed which was in excess of the maximum speed limit of sixty miles per hour." [2]

The case was tried by the court without a jury. The court finds the following:

### Facts.

On the night of September 23, 1959, three young men drove from Virginia, to Baltimore, in an automobile with Pennsylvania tags, to see if they could "date" two young Baltimore girls. The girls were agreeable. While they were "prettying" themselves, the two defendants arrived. Although their acquaintance with the girls was recent, and they were not going "steady", the defendants resented this invasion from the South and told the girls they (the defendants) would return in fifteen minutes. They went to defendant Mansfield's house where Mansfield borrowed $1 from his wife, and took his brother-in-law's police club. They returned to the girls' houses, and then went to a roadside diner, where they found the girls and the three foreigners just leaving. The defendants followed. The Pennsylvania car stopped in the course of making a U-turn. Mansfield approached the stopped car. A verbal altercation, lacking in refinement, occurred. Both vehicles left, going their separate ways.

The defendants, with three other companions, returned to the girls' neighborhood. The Pennsylvania car returned some hour or so later, but did not stop. Anderson followed, with Mansfield and the three companions. The pursuit continued on through the Harbor Tunnel. Mansfield, who had been riding in the front seat, then got into the left rear seat and told Anderson to catch up with them and he (Mansfield) would throw the club at them. Anderson did catch up, having to drive at least 85 miles per hour to catch up with the Pennsylvania auto which was exceeding 70 miles per hour,[3] and started to pass on the right. Mansfield then threw the club, striking the windshield[4] of the Pennsylvania car, which then went out of control and turned over several times before coming to a stop some 780 feet down the road. All of the occupants were injured, three severely.

Mansfield testified he decided to throw the club after a paper cup had been thrown at the car in which he was riding. Anderson testified that he knew that Mansfield was going to throw the stick "because the boys had insulted us, and they threw the cup out of the window first, and it hit on the windshield of my car." Anderson kept chasing the other car because "they insulted us"; "If they would have stopped, I would have punched one of them in the mouth."

1. U.S.C. Title 18, Sections 7(3), 113(c) and Section 2. It was stipulated at the trial that the allegation as to locus is correct.

2. U.S.C. Title 16, Section 3; 36 C.F.R. Section 3.30(b); Annotated Code of Maryland (1957), Article 66½, Section 211(d).

3. The driver of the Pennsylvania auto could not be found at the time of trial. His sworn statement was read into evidence without objection. It stated that he was driving 70 to 80 miles per hour, hoping to attract the police, and bring them to his assistance.

4. There is some conflict as to whether the stick hit the windshield, or the side of the Pennsylvania car. There is also some conflict as to whether a stick or bottle was thrown by Mansfield. Anderson and Mansfield both testified that the club or night stick was thrown. The court so finds.

## Discussion.

On the first count, the question is whether the striking with a missile[5] of a motor vehicle in which others are riding, constitutes, under the facts of this case, an "assault" upon the occupants thereof with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse. The court concludes that the answer should be in the affirmative.

Clearly there was no "just cause or excuse" for the conduct of the defendants, in their joint enterprise contemplating overtaking the Pennsylvania car, forcing it to stop, and then beating one or more of the occupants.

A "dangerous weapon" is one which as used or attempted to be used may endanger life or inflict great bodily harm. Price v. United States, 9 Cir., 1907, 156 F. 950, 952; United States v. Williams, D.C.D.Or.1880, 2 F. 61, 64; Tatum v. United States, 1940, 71 App. D.C. 393, 110 F.2d 555; Medlin v. United States, D.C.Cir.,1953, 207 F.2d 33, certiorari denied 347 U.S. 905, 74 S. Ct. 431, 98 L.Ed. 1064; see also Hopkins v. United States, 4 App.D.C. 430, 442.

Peats v. State, 1938, 213 Ind. 560, 12 N.E.2d 270, 275–276 holds that a person throwing at a moving vehicle may properly be presumed to intend the natural and ordinary consequences of his act; and that throwing missiles into the windshield of a truck was sufficient to meet the requirement of intentional injury so as to sustain a conviction for voluntary manslaughter. See also, Gill v. State, 1952, 85 Ga.App. 584, 69 S.E.2d 804; Phillips v. State, 1940, 140 Tex.Cr. R. 84, 143 S.W.2d 591; State v. Couch, 1946, 52 N.M. 127, 193 P.2d 405; Hill v. Commonwealth, 1931, 239 Ky. 646, 40 S.W.2d 261; Davis v. State, 1926, 106 Tex.Cr.R. 300, 292 S.W. 220; Mimbs v. State, 1939, 189 Ga. 189, 5 S.E.2d 770.

The throwing of the club against the Pennsylvania car was done with the intention of affecting the driver's conduct, and under circumstances where resulting loss of control, and injury to the occupants was natural and quite probable. The court finds both defendants guilty beyond a reasonable doubt of assault as charged.

On the second count, all the evidence including that offered on behalf of the defendant Anderson, is to the effect that at the time and place charged he was operating a motor vehicle far in excess of the maximum limit of 60 miles per hour. The court accordingly finds the defendant Anderson guilty on the second count, as charged.

---

5. There is some evidence to the effect that defendant Anderson side-swiped the other vehicle in an attempt to force it off the road. This evidence is not sufficiently strong, in and of itself, to warrant a conviction. It is significant, however, on the question of intent in the use of the missile.