**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Edward Terrence ROCHE, Defendant-
Appellant.**

**No. 379–70.**

United States Court of Appeals,
Tenth Circuit.

May 13, 1971.

Maron Moses, Jr., Denver, Colo., for appellant.

James A. Pusateri, Asst. U. S. Atty., Kansas City, Kan. (Robert J. Roth, U. S. Atty., Wichita, Kan., on the brief), for appellee.

Before BREITENSTEIN and HILL, Circuit Judges, and LANGLEY, District Judge.

HILL, Circuit Judge.

Appellant Roche was convicted on an indictment charging him for knowingly and willfully conveying from place to place within the United States Penitentiary at Leavenworth, Kansas, a thing designed to kill, injure or disable an employee or inmate thereof in violation of 18 U.S.C. § 1792.

The government's uncontroverted evidence was that on October 10, 1969, prison authorities searched Roche, then an inmate at Leavenworth, and found a false phallic appendage attached to his body. The false appendage was seized and turned over to the warden. Subsequently, when prison officer Stewart cut the object open for inspection in the presence of the prison warden and an F.B.I. agent, there was revealed a device with a chamber, spring mechanism, firing pin, breech, and a method to cock the spring and firing pin. Also found was a .22 rim-fire rifle cartridge chambered in the device. Officer Stewart testified that he was familiar with fire-arms and had many times disassembled pistols and rifles; he further testified that upon examining the device found on Roche, he believed that it was designed for and capable of firing a cartridge and propelling a bullet.

One Robert Hinds, a special investigator in charge of the Kansas City, Kansas, Office of Alcohol, Tobacco and Firearms Division, also testified for the government. After establishing that he had been schooled in the field of firearms, Hinds examined the device taken off Roche and described it as a homemade, rim-fire weapon capable of firing a .22 rim-fire round. Hinds further said that a projectile fired from the device would be capable of injuring or disabling a person struck by it.

On direct appeal, appellant's first contention is that his court appointed counsel was incompetent. In support of this contention, appellant argues that his counsel inexcusably failed to cross examine most of the government's witnesses, failed to object to any testimony and failed to dispute the government's case in final argument.

To sustain a claim of incompetent counsel, it is necessary to demonstrate that the representation was such as to make the trial a mockery, sham or a farce.[1] With that rule as our guiding light, we have searched the record and have found no basis for appellant's claim. We can garner nothing from the record amounting to a reasonable indication, as opposed to pure speculation, that more extensive cross examination would have dashed the government's case or even weakened it in any degree. Moreover, the record does not reveal that any telling objections could have been made. Finally, we can find no fault with trial counsel's final argument to the court sitting without a jury wherein he very simply could do no other than admit that the government's case against Roche was uncontroverted. In sum, it does not appear that a more active performance by

1. Brady v. United States, 433 F.2d 924 (10th Cir. 1970); Bruner v. United States, 432 F.2d 931 (10th Cir. 1970).

Roche's trial counsel would have been anything more than a futile charade. Such circumstances, of course, do not demonstrate incompetent representation reducing the trial to a mockery, sham or farce.

■ Next appellant submits that the government's evidence was insufficient to prove that the device was designed specifically to kill, injure, or disable an employee or inmate at the penitentiary. We cannot agree.

True it is that there was no direct evidence of Roche's intent respecting the device he carried around the prison. However, short of an admission there rarely can be direct proof of the accused's subjective state of mind. For this reason, the government may prove intent by means of circumstantial evidence.[2] In the instant case there was evidence that escape materials had previously been found in the possession of Roche, and thereafter he was considered to be an escape risk. Moreover, at trial it was disclosed that the device was found artfully concealed on Roche only a few days before he was scheduled to travel to Oklahoma to testify at a proceeding in that state. These facts and circumstances, coupled with the inferences to be drawn from Roche's mere possession of such a contraband device within the prison walls, surely is compelling evidence of Roche's intent respecting the device.

■ Finally appellant argues that the government failed to prove that the device was a weapon within the meaning of 18 U.S.C. § 1792.[3] Appellant's argument hinges on the fact that no tests were conducted with the device to see if in fact it would successfully fire. Appellant resorts to refined, sometimes tortured, definitions of the terms of the statute in seeking to persuade us that his device does not come within the prohibition of § 1792 unless independent tests prove it to be capable of inflicting injury.

However, we think it unnecessary in this case to construe whether the terms "weapon" and "firearm" encompass only devices of demonstrated lethal capability. For we believe that the government's evidence was otherwise sufficient to prove the offense. Two expert witnesses testified that in their opinion the device was a weapon and could inflict injury, and that is sufficient uncontroverted evidence to bring Roche's device within the ambit of the statute.

We must be mindful, too, that the statute does not limit the crime only to carrying weapons or firearms in a prison. The statute also makes it a crime to carry any "substance or thing designed to kill, injure, or disable any officer, agent, employee, or inmate." Clearly the statute goes further than prohibiting only proven combat weapons. The crime extends to carrying devices *designed* to kill, injure or disable, regardless of their subsequently proven effectiveness. Hence our view is that it was not necessary for the government to demonstrate that Roche's device would have functioned according to its purpose had Roche wielded it against an inmate or prison official. Proof of its malevolent design was enough.

Affirmed.

2.  United States v. Ebey, 424 F.2d 376 (10th Cir. 1970); Bishop v. United States, 396 F.2d 762 (10th Cir. 1968); Van Nattan v. United States, 357 F.2d 161 (10th Cir. 1966).

3.  The statute in pertinent part provides: "Whoever conveys into such institution, or from place to place therein, any firearm, weapon, explosive, or any lethal or poisonous gas, or any other substance or thing designed to kill, injure, or disable any officer, agent, employee, or inmate thereof, or conspires so to do—Shall be imprisoned not more than ten years."