**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John E. SWINDLER, Defendant-Appellant.**

**No. 72-1826.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Feb. 22, 1973.

Decided March 27, 1973.

Edward H. Funston, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., Bruce E. Miller, and Glen S. Kelly, Asst. U. S. Attys., on the brief), for plaintiff-appellee.

Patrick J. Hurley, Braintree, Mass., for defendant-appellant.

Before HILL and DOYLE, Circuit Judges, and BRATTON, District Judge.

WILLIAM E. DOYLE, Circuit Judge.

The appellant was convicted September 5, 1972, of the offense of conveying from place to place within the United States Penitentiary at Leavenworth, Kansas, a thing designed to kill, injure, or disable an employee, officer, agent or inmate of that institution. The indictment was pursuant to 18 U.S.C. § 1792.[1]

The facts are simple. The incident in question occurred on November 12, 1971, when the carpenter foreman, one Kenneth Payne, noticed a large quantity of sparks being emitted from a sanding machine. Payne went to investigate and the defendant stepped back next to the wall so that Payne's view of him was partially blocked. The appellant then reached behind himself and when Payne got to him he was holding a 16 penny nail in his hand. He told Payne that he was making a screwdriver out of it. Appellant was requested to go to the office approximately forty feet from the sanding machine. Once inside the office the appellant was searched by Payne and this yielded a steel bar which had been ground apparently and which was being made into a knife. It was found in the appellant's trousers pocket and was still hot. Testimony was that this item would be naturally found in the machine shop, but not in the carpenter shop.

Payne testified that when he was taking the appellant from the carpenter's shop to the captain's office appellant asked Payne if he could talk him "out of this."

The contentions made on this appeal are that, *first,* the evidence was insufficient to establish conveyance from place to place within a federal penal institution of a weapon, contrary to 18 U.S.C. § 1792; *second,* that the offense in question requires proof beyond a reasonable doubt of a specific intent to violate the statute or to knowingly and wilfully perform the act which the law forbids. It is claimed that the court erred in failing to instruct the jury as to the element of specific intent; *third,* that the court erred in refusing to grant a writ of habeas corpus ad testificandum for an inmate witness named Pino; *fourth,* that the government's failure to furnish an FBI report containing informal statements of certain witnesses constituted a

---

1. The second paragraph of this section provides:

    Whoever conveys into such institution, or from place to place therein, any firearm, weapon, explosive, or any lethal or poisonous gas, or any other substance or thing designed to kill, injure, or disable any officer, agent, employee, or inmate thereof, or conspires so to do—

violation of 18 U.S.C. § 3500; *fifth*, that the act under which this case was prosecuted is unconstitutional.

On behalf of the government the evidence consisted of the testimony of two correctional officers at the Leavenworth institution together with an FBI agent who was assigned to the institution. The substance of the testimony of Kenneth Payne has been set forth. A Mr. Kenny was in the office at the time that Payne searched appellant and discovered the instrument in question and he partially observed what occurred. The FBI agent testified that a portion of the instrument was hot when it was first brought to him several minutes after it came into Payne's possession.

Witnesses on behalf of the defendant testified that he was sharpening nails and did not have the metal in his possession or on his person.

## I.

### SUFFICIENCY OF THE EVIDENCE

■ The thrust of the argument on behalf of appellant is that there is no proof of actual conveyance, but rather evidence that the instrument was found in his possession after it had been moved from the grinder to the office. It is true that the testimony is circumstantial, but his possession of it in the office is indeed a strong circumstance since it is most unlikely that the defendant would have assumed possession of this instrument after he arrived at the office since he knew that he would be searched. On the contrary, he would have unloaded it if possible.

This court has held in a recent decision that even a short space in which the transportation occurred is enough and the defendant does not quarrel with this rule. *See* United States v. Meador, 456 F.2d 197 (10th Cir. 1972). At about the same time it was ruled that the movement of a knife to a stationary position did not constitute transportation, but that is not this case. *Compare* United States v. Bedwell, 456 F.2d 448 (10th Cir. 1972).

■ We now turn to consideration of the additional point as to the sufficiency of the evidence, the contention that the proof is inadequate to establish the capacity of the knife to produce injury or death. There was testimony that the metal bar was indeed being ground into a "knife." The jury had before it the object itself—a ten inch piece of sharpened steel. So expert testimony was unnecessary since the jury could conclude that this object was designed to kill, injure or disable. Although in United States v. Roche, 443 F.2d 98, 100 (10th Cir. 1971), two expert witnesses testified that it was their opinion that the device there in question was a weapon, as defined by § 1792, the court stated:

we think it unnecessary in this case to construe whether the terms "weapon" and "firearm" encompass only devices of demonstrated lethal capability. * * * Clearly the statute goes further than prohibiting only proven combat weapons. The crime extends to carrying devices *designed* to kill, injure or disable, regardless of their subsequently proven effectiveness.

## II.

### WHETHER SPECIFIC INTENT WAS ESTABLISHED

■■ It is noteworthy that there is no mention of intent in paragraph two of § 1792, *supra*. The offense consists of conveying into the institution, or from place to place therein, any firearm, weapon, explosive or any lethal or poisonous gas, or any other substance or thing designed to kill, injure or disable. Thus, all the emphasis is on the act. The proof must establish, *first*, the existence of a weapon or thing designed to kill, injure or disable. *Secondly*, it is essential that the weapon or thing be transported within the institution.

The statute is silent on intent, but obviously criminal intent is an essential element and the judge recognized this. His instruction called for knowingly doing the act of transporting an instrument and so knowledge that the thing

transported was a weapon or thing designed to kill, injure or disable. Defendant contends that there must be in addition a proof of specific intent to disobey the law, and he cites our decision in United States v. Meador, 456 F.2d 197, 199 (10th Cir. 1972) as requiring this. True, we noted in that opinion that the trial court had instructed the jury that the defendant had to have specific intent to disobey the law as a necessary prerequisite to conviction. We approved the trial court's instruction as being "full and complete." On a reconsideration of this question, in the light of the facts here presented, we are of the opinion that the statute does not demand proof of specific intent as is suggested in *Meador,* and we further believe that the trial court's instruction at bar was, under the statute, not only sufficient but was appropriate.[2]

### III.

### THE DENIAL OF THE DEFENDANT'S REQUEST PURSUANT TO RULE 17(b)

■ Error is not apparent in the denial of defendant's application to subpoena the witness Pino who was then at Springfield, Missouri. The only assurance that defendant's counsel could give to the court was that Pino was present in the institution and in the carpenter's shop on the day of the incident. He could not represent to the court that Pino's testimony was necessary to an adequate defense. Under these circumstances the court's refusal was within its discretion under Rule 17(b).

### IV.

■ Nor do we see any error in the failure of the government to furnish 18 U.S.C. § 3500 statements. These consist of informal descriptions by the investigating FBI agent as to testimony of several witnesses. Examination discloses that these are not true statements within the contemplation of 18 U.S.C. § 3500, and while it might have been better policy for the United States Attorney to furnish these, we are unable to say that the failure to do so would require a reversal since prejudice was not suffered.

### V.

■ As to the contention of the appellant that the statute, § 1792, is so vague and indefinite that it does not give notice of conduct which it prohibits, we have dealt with this question previously in United States v. Hedges, 458 F.2d 188 (10th Cir. 1972); United States v. Bedwell, 456 F.2d 448 (10th Cir. 1972); and United States v. Meador, 456 F.2d 197 (10th Cir. 1972), and are of the opinion that the statute is clear enough, and indeed we have so held in Carter v. United States, 333 F.2d 354 (10th Cir. 1964).

We conclude that the judgment of the district court should be and the same is hereby affirmed.

---

2. The trial court's instruction that knowledge was a requisite element reads:

In every crime there must exist a union or joint operation of act and intent. The burden is always on the prosecution to prove act and intent beyond a reasonable doubt. Intent may be proved by circumstantial evidence. It rarely can be established by any other means. While witnesses may see and hear and thus be able to give direct evidence what a defendant does or fails to do, there can be no eye witness account of the state of mind with which the acts were done or omitted. What a defendant does or fails to do may indicate intent or lack of intent to commit the offense charged.

It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted, so unless the contrary appears from the evidence, the jury may draw the inference that the accused intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused.

In determining the issue as to intent, the jury is entitled to consider any statements made and acts done or omitted by the accused and all facts and circumstances in evidence which may aid in determination of state of mind.