**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ernest DIXON, Defendant-Appellant.**

**No. 77–1397.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 27, 1977.

Decided Jan. 12, 1979.

Gretchen T. Vetzner, Madison, Wis., for defendant-appellant.

Stephen L. Morgan, Asst. U. S. Atty., Madison, Wis., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT and BAUER, Circuit Judges.

FAIRCHILD, Chief Judge.

On October 28, 1976, Defendant Dixon, an inmate at the Federal Correctional Institution in Oxford, Wisconsin, was apprehended with a sharpened table knife[1] in his possession as he walked across the prison yard. On December 13, 1976 he was indicted under 18 U.S.C. § 1792.[2]

Subsequently, defendant moved to dismiss his indictment for failure to allege the essential element of intent. The district court in denying the motion, ruled that knowledge was an element of the crime charged, but that it need not be alleged in the indictment. At trial, the court instructed the jury that the government must prove that defendant did the act voluntarily and purposely, and not because of mistake or accident.

Prior to jury selection, defense attorney submitted *voir dire* questions to the court, many of which related to race and prisoner status of appellant. Judge Doyle used six questions prepared by the defense in questioning prospective jurors. Although general background questions were addressed to individual jurors, questions pertaining to racial attitudes were addressed to the panel row by row. Where some doubt was ex-

---

1. In prison parlance, this type of weapon is called a "shank."

2. The second paragraph of this section provided a penalty for:

   Whoever conveys into such institution, or from place to place therein, any firearm, weapon, explosive, or any lethal or poisonous gas, or any other substance or thing designed to kill, injure, or disable any officer, agent, employee, or inmate thereof, or conspires so to do—

pressed by a juror, specific responses were elicited by Judge Doyle.

At trial the government presented testimony from the prison employee who apprehended the defendant carrying the knife, and from an inmate who testified to defendant's past possession of knives and to defendant's request on the day of apprehension that the witness make him a "shank." Defendant testified in his own behalf admitting that he had the knife, but that such possession was necessary because the prison officials designated him as a "Central Monitoring Case"[3] and he was in fear for his life.

The jury found defendant guilty.

## I. INTENT AS AN ESSENTIAL ELEMENT OF THE INDICTMENT

Defendant contends that the indictment is defective because it does not charge, either expressly or impliedly, the essential element of knowledge or intent. The indictment charged that Defendant Dixon:

did convey from place to place within that institution, a weapon or thing designed to kill, injure or disable an officer, agent, employee, or inmate thereof, in violation of Title 18, United States Code, § 1792.

■ The general rule is that an indictment is defective which fails to allege knowledge as an element when such element is explicitly contained in the statute. I Wright, Federal Procedure § 215 at 243 n. 20; *United States v. Wabaunsee*, 528 F.2d 1 (7th Cir. 1975). An indictment need not explicitly allege knowledge where knowledge can be imported from the words actually used. See *United States v. Arteaga-Limones*, 529 F.2d 1183, 1199 (5th Cir. 1976); *Wabaunsee, supra* at 3.

The statute in this case punishes one who "conveys" into or from place to place within a penal institution a weapon, etc. or other thing designed to kill or injure an officer or inmate. It does not explicitly require that such conveyance be done with knowledge,

but it has been held that, notwithstanding the silence of the statute, "obviously criminal intent is an essential element." *United States v. Swindler*, 476 F.2d 167, 169 (10th Cir. 1973). Other decisions have assumed that intentional or knowing transportation of the weapon must be proved, and have held the evidence sufficient on that score. *United States v. Roche*, 443 F.2d 98 (10th Cir. 1971); *United States v. Battle*, 459 F.2d 64 (4th Cir. 1972).

■ The test of sufficiency of an indictment is whether the defendant has been furnished

with such a description of the charge against him as will enable him to make his defence, [sic] and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, . . . to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had.

*United States v. Cruikshank*, 92 U.S. 542, 558, 23 L.Ed. 588 (1875). Under the *Cruikshank* test, the district court concluded that the indictment was sufficient to permit defendant to prepare a defense and to protect himself against further prosecution for the same offense.

Dixon does not really contend that he was misled or otherwise prejudiced by the lack of allegation that in conveying the knife he knew that he was doing so. He does argue, with neat logic, that since the general rule would require intent, if spelled out in the statute as an element of the offense, to be spelled out in the indictment, and since the courts interpret this statute to require knowledge or intent as an element, knowledge or intent must be spelled out in the indictment. He argues that in the absence of an explicit allegation of knowledge or intent in the indictment, the grand jury may well not have determined that there was probable cause to believe defendant acted knowingly.

---

3. A prisoner is identified as a Central Monitoring Case when prison authorities become aware of possible danger to the prisoner from other inmates.

■ We do not agree. Conceivably, of course, an individual could carry an object into, or from place to place within, a prison without knowing that he was carrying a weapon or other thing designed to kill or injure. Courts have deemed it obvious, however, that Congress did not intend to constitute such unknowing carriage a felony. The very obviousness of that view leads to the conclusion that an indictment using the words of the statute sufficiently charges the offense, including the doing of the act with knowledge. It is sufficient to enable the defendant to defend, to avoid further prosecution, and to demonstrate that the grand jury performed its responsibility.

Defendant relies on *United States v. Carll*, 105 U.S. 611, 612, 26 L.Ed. 1135 (1881), stating that

> it is not sufficient to set forth the offense in words of the statute, unless those words of themselves fully, directly and expressly, without any uncertainty or ambiguity, set forth all elements necessary to constitute the offense intended to be punished.

In *Carll*, the indictment charged uttering a forged obligation of the United States, those terms being the terms of the statute. It was held insufficient for failure to allege that "defendant knew the instrument which he uttered to be false, forged, and counterfeit." In the ordinary course of events there is greater probability that a person may utter a forged obligation of the United States without knowing that it is forged than that a person will carry a weapon into or within a penal institution without knowing that he is doing so. Moreover, the Supreme Court, in a recent case, quoted from *Carll* in a way which changes the emphasis in the language relied on. "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1973).

## II. ADEQUACY OF THE VOIR DIRE OF THE JURY

Defendant asserts that the district court conducted an inadequate inquiry into possible prejudices harbored by potential jurors. Although during *voir dire* the district court asked six questions relating to racial prejudice,[4] defendant asserts that Judge Doyle should have individually examined each juror on this issue and asked additional questions[5] requested by defense counsel.

4. The six questions asked by Judge Doyle were:
  1. And now about blacks and whites. Is there any one of you who would be inclined to give more credence to a witness or less credence to a witness simply because the witness is black or simply because the witness is white?
  2. Is there any one of you who works in an office or shop or someplace of employment where black people are employed?
  3. Is there any one of you who has had what you consider to be an unpleasant experience with a black person—some kind of altercation, some kind of disagreement of any significance?
  4. Is there any one of you who belongs to any organization or any social or political group which has as one of its policies a policy of excluding black people?
  5. Is there any one of you who comes here as a potential juror with the belief that in general black people are more likely to be violent than white people?

  6. Now I am informed that the defendant, Mr. Dixon, speaks with a dialect and sometimes uses language that contains slang or phrases which may not be familiar to some of you. If he should testify and if this is the case about his manner of speech and some of the words and terms that he might use and so on, does this prospect that he may be difficult to understand or that he may be speaking differently from any of you cause any of you to think that that might affect your ability to serve impartially?

5. The trial court refused to ask the following questions requested by counsel:
  1. Tell me how you feel about black people and whether you have worked with, gone to school with or socialized with black people.
  2. How do you feel about interracial marriage?
  3. How do you feel about your children having black friends or friends of another race?
  4. Do you belong to any organizations or groups in which there are no black members? What do you feel is the reason?

■ Although the circumstances of a particular case with respect to race may well require a federal court to make inquiry concerning racial attitudes of jurors, *Ristaino v. Ross*, 424 U.S. 589, 597, fn. 9, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1975); *cf. Ham v. South Carolina*, 409 U.S. 524, 526–7, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), no particular pattern of inquiry has been required.

■ Defendant argues that the court's inquiry was inadequate because the questions were addressed to groups of jurors and framed so as to call for a juror to respond where the answer was affirmative. Several questions proposed by defendant and not asked would have called upon each juror to verbalize concerning his own attitudes. Defendant cites decisions indicating preference for individual questioning, but these deal with possibly prejudicial publicity. *Patriarca v. United States*, 402 F.2d 314 (1st Cir. 1968); *United States v. Largo*, 346 F.2d 253 (7th Cir. 1975).

Necessarily an appellate court must rely considerably on the judgment of the trial judge in deciding on the nature and extent of the inquiry reasonably required. We find no basis for concluding that the inquiry made in this case was inadequate.

### III. EVIDENCE OF PRIOR MISCONDUCT

■ The government had the burden of proving that defendant knowingly carried the knife. It introduced testimony of inmate Davis that he had observed a knife in defendant's possession on earlier occasions, and that defendant had asked Davis to make a "shank" for defendant. Defendant concedes that the testimony was relevant to the issue of intent,[6] but contends that its probative value was outweighed by possible prejudice and that Davis' credibility was subject to enough question so that the evidence of past misconduct was not clear and convincing. See *United States v. Ostrowsky*, 501 F.2d 318, 321 (7th Cir. 1974).[7]

We think the district court did not abuse its discretion in admitting the testimony, but in view of defendant's later assertion that he possessed a knife at all times, any error in admitting the testimony would not be prejudicial.

Defendant's defense was, in effect, coercion by fear. He testified that he carried a knife solely for self protection and had it continuously in his possession for several months. On cross-examination the government questioned about instances when defendant had been stripped and searched as part of placement into administrative detention, the knife not being found. The court ruled that this was appropriate cross-examination in the light of defendant's testimony that he had a knife at all times. Again defendant concedes the questions had a valid purpose, but suggests the questions could have been masked in some fashion so that an inference of misconduct could not so readily have been drawn. We do not find any abuse of discretion.

### IV. DISTRICT COURT'S INSTRUCTION ON EXCULPATORY STATEMENTS AS CIRCUMSTANTIAL EVIDENCE

■ Defendant objects to the district court's instruction to the jury that if they found defendant to have made certain vol-

5. Is any subjective prejudice that you may have toward a person who is black and a prisoner such that you can recognize it and make allowances for it?

6. Rule 404(b) states:
   *Other crimes, wrongs, or acts.*— Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

7. The three-part test for admissibility in *Ostrowsky* is as follows:
   1. . . . [I]t must be demonstrated that the evidence is of a type that fits within one of the exceptions to the general rule of admissibility;
   2. even though evidence of a prior crime is relevant, the court must engage in a balancing process to decide whether the probative value of the evidence of other criminal activity outweighs the possible prejudice to defendants occasioned by such evidence; and,
   3. the evidence of the other crime must be clear and convincing.

untary exculpatory statements prior to trial which were untrue, they might consider such statements as circumstantial evidence of defendant's consciousness of guilt. Defendant contends the instruction unduly focuses the jury's attention on defendant's credibility. Defendant's credibility was, however, an issue. We do not find this instruction inappropriate or unduly prejudicial.

The judgment appealed from is AFFIRMED.