UNITED STATES of America, Appellee,

v.

Kevin Ronald HAMILTON, Appellant.

No. 79–5081.

United States Court of Appeals,
Fourth Circuit.

Argued May 8, 1980.

Decided July 22, 1980.

John E. Griswold, Petersburg, Va. (White, Hamilton, Wyche & Shell, Petersburg, Va., on brief), for appellant.

N. George Metcalf, Asst. U.S. Atty., Richmond, Va. (Justin W. Williams, U.S. Atty., Richmond, Va., Tom B. Barwick, Student Asst. to the U.S. Atty., on brief), for appellee.

Before FIELD, Senior Circuit Judge, and HALL and PHILLIPS, Circuit Judges.

FIELD, Senior Circuit Judge:

A federal grand jury for the Eastern District of Virginia returned a two count indictment against the defendant, Kevin Ronald Hamilton. The first count charged the defendant with an assault with a dangerous weapon upon an employee of the Federal Correctional Institution at Petersburg, Virginia, in violation of Title 18 U.S.C. § 111.[1] The second count charged

1. 18 U.S.C. § 111. *Assaulting, resisting, or impeding certain officers or employees*

Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any

Hamilton with the conveyance from place to place within the Institution of a weapon, substance or thing designed to kill, injure or disable an employee of the Institution in violation of 18 U.S.C. § 1792.[2] The defendant waived a jury and was tried to the court who convicted him on both counts. Hamilton has appealed.

The evidence, viewed in the light most favorable to the Government, disclosed the following facts. On December 15, 1978, the defendant, upon returning from a visit to the dentist, refused to enter his cell. The Correctional Supervisor called upon several officers, including Sheryl Murray, to assist in placing Hamilton in his cell. As the officers entered the area, the defendant procured a broom handle from his cell and approached the guards swinging the handle "like a ball bat." When the defendant took the broom handle from his cell, the bottom or bristle portion of the broom had been removed from the handle. The defendant walked forty to fifty feet from his cell while swinging the handle in a menacing manner, and upon reaching the officers struck Murray twice inflicting painful injuries.

■ We have little difficulty with the conviction on the first count. While there was some conflict in the testimony concerning the confrontation between the defendant and the officers, there was ample evidence to support the court's determination of guilt, and unquestionably "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

In challenging his conviction under count two, the defendant argues that since the broom handle had not been modified or altered in any way it could not be properly classified as a "weapon * * * or thing designed to kill, injure, or disable" under Section 1792. We cannot accept such a restrictive reading of the statute. By its terms, the statute does not limit the crime to weapons or firearms, but embraces any "substance or thing designed to kill, injure, or disable any officer, agent, employee, or inmate." As the court noted in *United States v. Roche*, 443 F.2d 98, 100 (10 Cir. 1971), "the statute goes further than prohibiting only proven combat weapons."

■ The objective of section 1792 is the maintenance of order and security in federal penal institutions. Articles which would ordinarily be considered relatively innocuous may acquire the characteristics of a lethal weapon in a penal institution. Whether an article should be deemed a weapon depends not only upon the nature of the article but the intent with which it is used or conveyed by the individual. This is ordinarily a question to be determined by the jury or the court as trier of the facts. In *United States v. Barnes*, 569 F.2d 862, 863 (5 Cir. 1978), the court noted "that almost any implement, even a belt buckle, could be intended or used as a weapon," and held that whether an item constituted a weapon, was a question of fact for the jury. *See also United States v. Swindler*, 476 F.2d 167, 170 (10 Cir. 1973), *cert. denied* 414 U.S. 837, 94 S.Ct. 183, 38 L.Ed.2d 72.

In our own circuit, we have read the phrase "dangerous weapon" in a liberal fashion. In *United States v. Johnson*, 324 F.2d 264 (4 Cir. 1963), we affirmed a conviction of an assault with a dangerous weapon under 18 U.S.C. § 113(c), a statute, incidentally, much narrower in its terms than section 1792. There the defendant had struck and injured an institutional officer with a

---

person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years or both.

2. 18 U.S.C. § 1792 reads in pertinent part as follows:

Whoever conveys into such institution, or from place to place therein, any firearm, weapon, explosive, or any lethal or poisonous gas, or any other substance or thing designed to kill, injure, or disable any officer, agent, employee, or inmate thereof, or conspires so to do—

Shall be imprisoned not more than ten years.

metal and plastic chair. Writing for the court in that case, Judge Sobeloff made the following observation:

> The main legal contention is that a chair is not a dangerous weapon. *While it may not be a dangerous weapon per se, 4 Am.Jur. Assault and Battery § 34, p. 145, almost any object "which as used or attempted to be used may endanger life or inflict great bodily harm." United States v. Anderson, 190 F.Supp. 589, 591 (D. Md. 1960), or which, as it is sometimes expressed, "is likely to produce death or great bodily harm," Tatum v. United States, 71 App.D.C. 393, 110 F.2d 555, 556 (1940), can in certain circumstances be a dangerous weapon.* Illustrating this principle, courts have held that a wine bottle can be a dangerous weapon, *Thornton v. United States,* 106 U.S.App.D.C. 7, 268 F.2d 583 (1959); shoes can be dangerous weapons, *Medlin v. United States,* 93 U.S.App.D.C. 64, 207 F.2d 33 (1953); a rake can be a dangerous weapon, *Eagleston v. United States,* 172 F.2d 194 (9th Cir. 1949); a thrown club can be a dangerous weapon, *United States v. Anderson,* 190 F.Supp. 589 (D. Md.1961); a brick can be a dangerous weapon, *State v. Perry,* 226 N.C. 530, 39 S.E.2d 460 (1946); and a chair leg can be a dangerous weapon, *Wisniewski v. State,* 51 Del. 84 [1 Storey 84] 138 A.2d 333 (1957). *Not the object's latent capability alone, but that, coupled with the manner of its use, is determinative.* The chair in the instant case was metal and plastic. It was wielded from an upright (overhead) position and brought down upon the victim's head. Fortuitously, the wound inflicted was not serious, but had the blow fallen an inch lower it could have endangered Cassidy's eye, or if slightly higher, a dangerous head wound was likely. *Evidence of such use of a chair is sufficient to support its characterization by the District Court as a dangerous weapon.* (Emphasis added).

324 F.2d, at 266.

■ In our opinion the conclusion of the district judge that the broom handle used and conveyed by the defendant constituted a weapon "or thing designed to kill, injure or disable" within the meaning of section 1792 was reasonable and amply supported by the evidence. We further conclude that traversing the forty or fifty feet between his cell and the officers while brandishing the weapon was a sufficient "conveyance" by the defendant to establish that element of the offense. *See United States v. La-Bare,* 542 F.2d 926 (4 Cir. 1976), *cert. denied* 429 U.S. 1027, 97 S.Ct. 651, 50 L.Ed.2d 630. Accordingly, the convictions on both counts are affirmed.

*AFFIRMED.*

K. K. HALL, Circuit Judge, dissenting in part:

The requirements for conviction under 18 U.S.C. § 1792 have been misconstrued by the majority and erroneously applied to the facts in this case. Therefore, I respectfully dissent.

My brothers correctly affirm defendant's conviction of the charge of assault with a dangerous weapon under 18 U.S.C. § 111. Numerous cases clearly state that an unlimited number of otherwise innocuous objects may become dangerous weapons when used by one in attacking his fellow man.[1] The majority goes astray when it cites this line of cases to support its affirmance of the conviction under § 1792. Citation of cases tried directly under § 1792 in no wise support the majority view. Quite the contrary, in *U.S. v. Roche,* 443 F.2d 98 (10th Cir. 1971), the weapon was a device *designed* for and capable of firing a cartridge and propelling a bullet. In *U.S. v. Barnes,* 569 F.2d 862 (5th Cir. 1978), the weapon was a stolen automobile antenna with a taped handle and a long sheath, and at the time of discovery the tip was being ground into a sharp knife-like point. Both of these were weapons "*designed* to kill, injure or disable" as required by the statute.

---

1. Counsel for defendant at oral argument conceded that the broomstick described in the evidence became a dangerous weapon when coupled with the assault and that his client was properly convicted under § 111.

By enacting § 1792, Congress sought to preserve prison security by punishing the conveyance of weapons within the prison. As the majority notes, practically anything can be used as a weapon. Since Congress obviously could not punish the conveyance of all potential weapons, it addressed only those instruments which pose an objectively ascertainable threat to prison security.

The language of § 1792 demonstrates Congress' intent to create an objective standard. The section specifically refers to "substance or thing *designed* to kill, injure or disable." (emphasis added). Such language contemplates a substance or thing which is created or modified to inflict harm.

Today's decision makes every prisoner who wears a belt buckle or carries a broom a potential violator of § 1792, with his ultimate guilt dependent upon his later conduct. I do not believe Congress intended to reach such an illogical result. Accordingly, I would reverse the defendant's conviction under § 1792. I concur with the affirmation of the defendant's conviction under § 111.