884 F.2d 1390
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ewen Tederra WINN, Defendant-Appellant.
 No. 88-5173.
 United States Court of Appeals, Fourth Circuit.
 Submitted May 1, 1989.
Decided July 24, 1989.
 
 Chester Lavester Banks, for appellant.
 Henry E. Hudson, United States Attorney, Linda Ann Katz, Office of the United States Attorney) for appellee.
 Before K.K. HALL, MURNAGHAN, and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Ewen Tederra Winn was convicted following a bench trial of assault with a deadly weapon with the intent to cause bodily harm, and driving with a suspended or revoked driver's license, offenses proscribed by 18 U.S.C. Secs. 113(c) and 13 (assimilating Va.Code Ann. Sec. 46.1-350), respectively. Winn appeals, contending that the evidence was insufficient to sustain his convictions and that inadmissible hearsay evidence was received by the trial court. Finding no merit to his appeal, we affirm his convictions.
 
 I.
 
 2
 Winn's Virginia driving privileges were suspended in December 1987 following his conviction in the U.S. District Court for the Eastern District of Virginia of driving while intoxicated. The conviction allowed three exceptions to the suspension of privileges: Winn could operate a vehicle (i) traveling to and from home and work, (ii) while performing errands ordered by his employer, and (iii) while traveling between home and ASAP [alcohol safety awareness program] or rehabilitation meetings.
 
 
 3
 In the early-morning hours of May 14, 1988, Winn was driving an automobile on the military reservation known as Marine Corps Base Quantico, Virginia [MCB Quantico]. MCB Quantico had in effect on that date a safety program known as the Combined Accident Reduction Effort, or "CARE." Pursuant to CARE, all vehicles exiting MCB Quantico were briefly stopped at exit gates to ensure occupants were wearing seatbelts; the gate sentries were also checking for intoxicated drivers.
 
 
 4
 As Winn attempted to exit MCB Quantico at Gate 1 at approximately 2:15 a.m., a Marine military policewoman ordered him to stop his vehicle. Winn ignored her orders to stop and slowly drove on through the gate. Some 12-15 feet down the road a second Marine military policeman stepped into the roadbed in front of Winn's vehicle and gave hand signals and shouted commands for Winn to stop.[1] Winn bore down on the Marine.
 
 
 5
 At the last moment the Marine dived onto the hood of Winn's vehicle to avoid being run over. He landed on the hood directly in front of Winn's line of sight and repeated his orders for Winn to stop his vehicle. Instead, Winn accelerated his car toward U.S. Highway 1.
 
 
 6
 While clinging valiantly to the hood of Winn's accelerating car, the Marine managed to unholster his service pistol, point it directly at Winn's face, and forcefully and colorfully renew his orders to stop. Winn complied. He was arrested and ultimately convicted on the two charges stated above.
 
 II.
 
 7
 Winn first contends in this appeal that the evidence is insufficient to sustain his conviction of assault with a deadly weapon with the intent to cause bodily harm. He denies that his automobile is a "dangerous weapon," as contemplated by 18 U.S.C. Sec. 113(c), and denies having specific intent to cause bodily harm to the young Marine who landed on the hood of his automobile. He also contends that the evidence admitted to establish his operation of a vehicle while his driving privileges were suspended is hearsay and thus insufficient to prove his guilt under 18 U.S.C. Sec. 13 (assimilating Va.Code Ann. Sec. 46.1-350).
 
 
 8
 The standard of review applicable to our consideration of these issues is whether, considering the evidence in the light most favorable to the government, a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. United States v. Tresvant, 677 F.2d 1018 (4th Cir.1982); United States v. MacDougall, 790 F.2d 1135, 1151 (4th Cir.1986). "This rule applies whether the finder of fact is a judge or a jury." United States v. Reid, 533 F.2d 1255 (D.C.Cir.1976).
 
 
 9
 Winn's contention that his automobile was erroneously determined to be a dangerous weapon is totally without merit. Any object used in a manner which can cause bodily harm may be a dangerous weapon; it is the use to which the object is put--rather than the innocuous use for which it was intended--that determines whether it is a dangerous weapon. United States v. Hamilton, 626 F.2d 348, 349 (4th Cir.), cert. denied, 449 U.S. 902 (1980).[2] Clearly, deliberately driving one's automobile directly into another human being is perverting the automobile's utility into a dangerous weapon. The district court was not in error for so concluding.
 
 
 10
 The determination whether Winn had specific intent to cause bodily harm to the Marine military policeman is an objective one. The record vividly discloses that Winn drove his automobile directly into the young Marine. He and the Marine had eye contact just moments before the impact. The Marine was signaling and shouting for Winn to stop his automobile. Winn drove on. The Marine had two options: allow himself to be run over, or seek refuge atop the hood of Winn's automobile. Either option necessarily carried an unreasonable risk of serious bodily harm--indeed, even death. Winn's specific intent to cause bodily harm could be established just on these facts alone.
 
 
 11
 However, there is more. With the Marine sprawled atop the hood of his car, Winn suddenly accelerated away from MCB Quantico. Tragedy was avoided only because the courageous Marine worked his pistol free from its holster--while clinging with one hand to the hood of Winn's automobile, pointed it directly at Winn's face, and thus convinced Winn to stop his automobile.
 
 
 12
 On this factual background, we find no error in the district court's conclusion that
 
 
 13
 he [Winn] intended to hit this victim and intended to do bodily harm. And he did. He didn't do too much bodily harm fortunately, but he certainly assaulted this MP with the intent to do bodily harm, using the automobile as a dangerous weapon and without any just cause or excuse.
 
 
 14
 Appellant's conviction on Count I shall be affirmed.
 
 III.
 
 15
 Winn's second assignment of district court error is that the evidence was insufficient to sustain his conviction of driving while his license was suspended. The elements of this offense are that
 
 
 16
 . the driver's license has been suspended or revoked;
 
 
 17
 . the driver had notice of the suspension; and,
 
 
 18
 . he drive a vehicle on a Virginia highway.
 
 
 19
 Proof that Winn's license was suspended on May 14, 1988, came in through the testimony of the assaulted Marine military policeman. The Marine testified, without objection, that a computer check of Winn's Commonwealth of Virginia driving history was obtained shortly after Winn's arrest; the computer entries disclosed the suspension period and listed the three exceptions under which Winn could operate an automobile. Further, a copy of Winn's Virginia driving history, attested to by the Commissioner of the Virginia Department of Motor Vehicles, was introduced into evidence through the same Marine military policeman, without objection. The Marine also testified, and the documentary exhibit disclosed, that notice of the driving suspension was mailed to, and received by, Winn. Although Winn took the witness stand in his own defense, he never denied that his driving privileges were duly suspended or that he lacked notice of their suspension.
 
 
 20
 Finally, the Marine military policeman testified that he had knowledge, based on a Naval Investigative Service report, (i) that Winn was unemployed on May 14, 1988--thus foreclosing a defense that Winn was traveling to or from home and work or was traveling on an employment-required errand, and (ii) that the local ASAP meetings were conducted from 6:00 to 10:00 p.m., Monday through Friday--thus foreclosing a defense that Winn was motoring to or from ASAP at 2:15 a.m. Again, Winn failed to object to the admission of this testimony at trial; he will not be allowed to raise his objections on appeal.
 
 
 21
 Winn's conviction on Count II shall be affirmed.
 
 IV.
 
 22
 Having reviewed the record and evidence in the light most favorable to the government, we conclude that the evidence clearly establishes, beyond a reasonable doubt, Winn's guilt on Counts I and II. Accordingly, we affirm his convictions under 18 U.S.C. Secs. 113(c) and 13. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 Gate 1 was described as being well-lighted at night by two street lights, eight floodlights, and lights on the inside of the gate itself. Further, the Marine military police wore reflective vests and had lighted nightsticks attached to their duty belts, and carried flashlights affixed with lighted wands
 
 
 [2]
 See United States v. Daulton, 488 F.2d 524 (5th Cir.1973), cert. denied, 416 U.S. 989 (1974), for a catalog of cases involving the use of innocuous items as dangerous weapons