19 F.3d 1431
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Paul Alphonso PAYNE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jeremiah CHAMBERS, Defendant-Appellant.
 Nos. 92-5833, 92-5849.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 11, 1994.
Decided March 30, 1994.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, District Judge. (CR-92-53-R)
 John Adrian Gibney, Jr., Shuford, Rubin & Gibney, P.C., Richmond, VA, for appellant Chambers; David William Rhodes, Vergara & Associates, Hopewell, VA, for appellant Payne.
 N. George Metcalf, Asst. U.S. Atty., Richmond, VA, for appellee.
 Jane Chittom, Shuford, Rubin & Gibney, P.C., Richmond, VA, for appellant Chambers.
 Helen F. Fahey, U.S. Atty., Richmond, VA, for appellee.
 E.D.Va.
 AFFIRMED.
 Before WILKINSON and HAMILTON, Circuit Judges, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This case raises the question whether the district court erred in refusing to instruct the jury that it could find the defendants guilty of lesser-included offenses of the charged offense. Because the record discloses no factual dispute regarding the element differentiating the charged offense from the lesser-included offenses, we find that the defendants were not entitled to a lesser-included offense instruction. Accordingly, we uphold the judgments of conviction.
 
 I.
 
 2
 Defendants Paul Payne and Jeremiah Chambers are inmates of the Federal Correctional Institution at Petersburg, Virginia. On February 23, 1992, Payne had a run-in with another inmate, Matthew Mauro, outside the chow hall. Although Payne and Mauro did not have a physical confrontation at that point, they both left expecting a fight in the near future. After the incident, Mauro went to the basement of Lee Hall, told a friend named James Ball about the run-in with Payne, and asked Ball to back him up if he had to fight Payne. Shortly after his talk with Ball, Mauro went to take a shower.
 
 
 3
 In the meantime, Payne went to the recreation facility to talk to Chambers. Payne told Chambers that he had a problem with Mauro, and asked Chambers to "watch his back" during his impending confrontation with Mauro. The two inmates then went back to Lee Hall and began searching for Mauro. When they found Mauro in the shower room, Payne entered the room and began to fight with Mauro. What happened during the shower room fight is disputed. According to Mauro and a government eyewitness named Donald Thompson, Payne began hitting Mauro immediately after entering the shower area. Although Mauro attempted to fight back, Chambers came in and knocked him to the floor. Payne and Chambers then began kicking Mauro all over his body, including his head, with their steel-toed boots. According to Payne and Chambers, Mauro was the one who first started throwing punches and kicking. Payne and Chambers hit Mauro in order to defend themselves, but never kicked him around his head area. Mauro received his head injury, they claim, when he fell and hit his head on the shower wall. It is undisputed that Payne and Chambers left about five minutes after the fight started, leaving Mauro lying on the shower floor.
 
 
 4
 Mauro eventually got out of the shower room, put on some clothes, and reported the incident to prison officials. After identifying Payne as one of his attackers, he was taken to John Randolph Hospital for treatment of his injuries. At the hospital, Dr. Peter Ault examined Mauro and concluded that Mauro suffered substantial physical injuries, including numerous contusions, multiple lacerations requiring stitches, as well as a skull fracture. Because of the seriousness of the skull fracture, Mauro was transferred to the Medical College of Virginia, where he was examined by a neurosurgeon named Dr. Katherine Holloway. Dr. Holloway found that the fracture was serious enough to possibly result in bruising of the brain and meningitis.
 
 
 5
 Prison officials investigating the shower incident first questioned Payne, who denied any knowledge of or involvement in the incident. On March 6, 1992, the investigators conducted an interview with Chambers. Although Chambers initially denied any involvement in the incident, he eventually admitted his participation in the attack on Mauro. He confessed that he and Payne went to the shower room to fight Mauro, that he saw Payne kicking Mauro with his steel-toed boots, and that he himself kicked and hit Mauro a couple of times. Based on this evidence and Mauro's identification of Payne, a grand jury returned a two-count indictment against both Payne and Chambers for assault resulting in serious bodily injury, see 18 U.S.C. Sec. 113(f), and assault with a dangerous weapon, see 18 U.S.C. Sec. 113(c). The defendants were also charged with aiding and abetting the assault. See 18 U.S.C. Sec. 2.
 
 
 6
 The charges were tried to a jury in September 1992. The jury returned guilty verdicts on each count against both defendants. At the sentencing hearing, the district court sentenced Payne to serve concurrent sentences of one hundred eight months on Count One, and sixty months on Count Two. Chambers was sentenced to concurrent sentences of ninety months on Count One and sixty months on Count Two. Both were sentenced to three-years supervised release, and ordered to pay $5487.83 each in restitution to the Petersburg Federal Correctional Institution. Defendants now appeal.
 
 II.
 
 7
 At the close of the evidence, defendants submitted proposed jury instructions permitting the jury to convict on either of two lesser-included offenses--assault by striking, beating, or wounding, see 18 U.S.C. Sec. 113(d), or simple assault, see 18 U.S.C. Sec. 113(e)--in lieu of finding the defendants guilty of the charged offenses. The district court gave the lesser-included offense instruction on Count Two, assault with a dangerous weapon, but refused to give the same instruction on Count One, assault resulting in serious bodily injury. Defendants now contend that the court's failure to give a lesser-included offense instruction on Count One constituted reversible error.
 
 
 8
 We disagree. "A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." Sansone v. United States, 380 U.S. 343, 350 (1965); see also Keeble v. United States, 412 U.S. 205, 208 (1973) (requiring a lesser-included offense instruction "if the evidence would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit him of the greater"). Accordingly, a defendant is not entitled to a lesser-included offense instruction unless "the proof on the element or elements differentiating the two crimes [is] sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense." United States v. Blankenship, 548 F.2d 1118, 1120 (4th Cir.1976) (quoting United States v. Whitaker, 447 F.2d 314, 317 (D.C.Cir.1971)). The decision whether "there is enough evidence to justify a lesser included offense charge rests within the sound discretion of the trial judge." United States v. Chapman, 615 F.2d 1294, 1298 (10th Cir.1980); see also United States v. Busic, 592 F.2d 13, 25 (2d Cir.1978).
 
 
 9
 Here, the element differentiating the charged offense and the lesser-included offenses is the requirement that the assault have resulted in a serious bodily injury. The evidence at trial, however, revealed no factual dispute regarding this element. As an initial matter, it is undisputed that the skull fracture sustained by Mauro was sufficiently serious to constitute a "serious bodily injury" under 18 U.S.C. Sec. 113(f). Moreover, the evidence at trial firmly established that the skull fracture resulted from the shower incident. Mauro testified that both Chambers and Payne kicked him in the head with their steel-toed boots. An eyewitness, Donald Thompson, confirmed Mauro's account by testifying that he saw Payne kicking Mauro in the head. Chambers' confession also stated that Payne kicked Mauro. Finally, Chambers and Payne testified that Mauro's head injury must have occurred when Mauro fell back after Chambers hit him in the shower, and thereby admitted that the head injury resulted from the shower incident. Given the overwhelming evidence linking Mauro's head injury to the shower incident, a reasonable jury could not find that the shower incident constituted an assault without also finding that the serious bodily harm stemmed from the assault. It follows that the jury could not find the defendants guilty of assault without also finding them guilty of assault resulting in serious bodily harm. We hold therefore that the district court did not abuse its discretion in refusing to give a lesser-included offense instruction on Count One.
 
 III.
 
 10
 The defendants next challenge the district court's jury instructions regarding assault with a dangerous weapon. See 18 U.S.C. Sec. 113(c).
 
 
 11
 The court instructed the jury that "a dangerous weapon is one which, as used or attempted to be used, may endanger life or inflict great bodily harm. Thus, steel-toed boots may be classified as dangerous weapons if used to endanger life or inflict great bodily harm." Defendants contend that the court's instruction improperly influenced the jury to conclude that steel-toed boots are dangerous weapons.
 
 
 12
 We find no merit in this argument. It is well-established that "almost any object which as used or attempted to be used may endanger life or inflict great bodily harm ... can in certain circumstances be a dangerous weapon." United States v. Hamilton, 626 F.2d 348, 350 (4th Cir.1980) (citing United States v. Johnson, 324 F.2d 264, 266 (4th Cir.1963)) (emphasis added). Applying this principle, different courts have held that innocuous objects such as wine bottles, Thorton v. United States, 268 F.2d 583, 584 (D.C.Cir.1959), chairs, Johnson, 324 F.2d at 266, and shoes, Medlin v. United States, 207 F.2d 33, 33 (D.C.Cir.1953), constituted dangerous weapons because of the threatening manner in which they were used. Here, the district court did nothing more than state this general principle and ask the jury to determine whether the defendants' use of their steel-toed boots fit within this definition. The court never suggested to the jury that the boots constituted a dangerous weapon in this case; to the contrary, the instruction left it to the jury to make the factual finding whether the boots were used to inflict great bodily harm upon Mauro. We therefore hold that the court's instruction, far from invading the province of the jury, was an accurate reflection of the law.
 
 IV.
 
 13
 Payne also contends that the district court erred in calculating his sentence under the sentencing guidelines. The court added two points to Payne's base offense level for his "aggravating role" in the offense, U.S.S.G. Sec. 3B1.1, on the ground that Payne was a leader in committing the assault on Mauro. Payne argues that the record is absent of any evidence indicating that he directed Chambers to engage in any illegal activity or that he planned an assault on Mauro. Because he did not exercise any control over Chambers, Payne concludes that he should not have received the two-level leadership enhancement.
 
 
 14
 We disagree. Under Sec. 3B1.1(c), the district court may assess a two-level enhancement if it determines that "the defendant was an organizer, leader, manager, or supervisor in any criminal activity...." In making this factual determination, the district court may consider factors such as "the nature of participation in the commission of the offense [and] the recruitment of accomplices." U.S.S.G. Sec. 3B1.1, Application Note 4. Here, the district court heard evidence that Payne approached Chambers, told him that he was "going to do" Mauro, and asked Chambers to "watch his back" during the resulting fight. Some witnesses, including Chambers, testified that Payne led Chambers through the prison facilities looking for Mauro and then started a fight with Mauro in the shower while Chambers kept guard. This evidence clearly demonstrated, as the district court found, that "without [Payne's] active involvement and behavior, this whole incident would not have happened." We therefore find that the district court's determination that Payne played a leadership role in the offense is not clearly erroneous. See United States v. Smith, 914 F.2d 565, 569 (4th Cir.1990) (holding that the district court's determination of a defendant's role in the offense is subject to the "clearly erroneous" standard of review).
 
 V.
 
 15
 We find no merit in appellants' other assignments of error. For the foregoing reasons, the judgments of the district court are
 
 
 16
 AFFIRMED.